UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                         :

CANDACE BOCCI,                       :

                                         :

               Plaintiff,        :

                                         :        23 Civ. 1780 (JPC) (KHP)

      -v-                       :

                                         :        <u>ORDER ADOPTING</u>

NATIONSTAR MORTGAGE LLC          :        <u>REPORT AND</u>
d/b/a MR. COOPER, and DEUTSCHE BANK   :        <u>RECOMMENDATION</u>
NATIONAL TRUST COMPANY, AS TRUSTEE FOR :
BCAP TRUST LLC 2007-AA3 MORTGAGE PASS- :
THROUGH CERTIFICATES SERIES 2007-AA3,  :

                                         :

               Defendants.     :

                                         :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       Candace Bocci, acting *pro se*, brings this civil action against Nationstar Mortgage LLC

d/b/a/ Mr. Cooper ("Nationstar") and Deutsche Bank National Trust Company ("Deutsche Bank"),

in its capacity as trustee for BCAP Trust LLC 2007-AA3 Mortgage Pass-Through Certificates

Series 2007-AA3.  Through her Amended Complaint, Dkt. 14 ("Am. Compl."), Bocci alleges that

in servicing her mortgage—and eventually attempting to foreclose on her home—Defendants

violated a host of federal and state consumer protection statutes and regulations including the Real

Estate Settlement Procedures Act, the Truth in Lending Act, the Fair Credit Reporting Act, and

Section 349 of the New York General Business Law.  In addition to her statutory claims, Bocci

seeks to bring a grab-bag of common law causes of action, including claims for breach of contract,

fraud, and defamation.

       Defendants countered with a motion to dismiss the Amended Complaint for failure to state

any claims for relief.  Dkt. 47.  On June 28, 2024, the Honorable Katharine H. Parker issued a

Report and Recommendation, which recommended that the Court grant in part and deny in part the motion to dismiss. Dkt. 54 ("R&R"). Defendants filed objections to the Report and Recommendation, Dkt. 58, and, three days later, Bocci filed objections as well, Dkt. 60. The Court overrules each of the parties' objections, adopts the Report and Recommendation in full, and grants Bocci leave to further amend her complaint as to those claims that are dismissed without prejudice.

## I. Background

### A.    Facts[1]

The Court assumes familiarity with the factual background of this case and with Judge Parker's Report and Recommendation, and only provides a brief summary here.

On March 22, 2007, Bocci closed on the purchase of a condominium unit in lower Manhattan. Am. Compl. ¶ 9. To help pay for that home, Bocci executed a $760,000 mortgage loan with a lender. *Id.* Under the terms of Bocci's mortgage loan, she was only responsible for making payments on the interest portion of the loan for ten years, after which point she would be required to start paying off the principal as well. *Id.* ¶ 13. A couple of months after she signed for the loan, Bocci's lender sold her mortgage, which eventually became "incorporated" into BCAP Trust LLC 2007-AA3 Mortgage Pass-Through Certificates Series 2007-AA3, an entity for which Deutsche Bank serves as the trustee. *Id.* ¶¶ 10, 18. And, in July 2013, Nationstar took over responsibility for servicing the loan. *Id.* ¶ 11.

In late 2017, Bocci found herself in financial trouble. She had recently lost her job, which made it difficult for her to keep up with her mortgage payments, particularly since her obligation

---

[1] The following facts, which are assumed true solely for purposes of this Opinion and Order, are taken from Bocci's Amended Complaint and the exhibits attached thereto. *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

to make payments on the principal portion of the loan had started in March of that year. *Id.* ¶ 14. Bocci accordingly reached out to Nationstar in October 2017 to begin exploring payment alternatives such as a "temporary loan modification." *Id.* ¶¶ 14-15. Eventually, in December 2017, she submitted a "loan modification application" to her point of contact at Nationstar. *Id.* ¶ 30.

On January 22, 2018, Bocci received a letter from Nationstar dated January 12, 2018 (the "Forbearance Letter") regarding its Unemployment Program. *Id.* ¶ 34, Exh. 9. The letter informed Bocci that she had "qualified for the Unemployment Program" and was being offered a "temporary Forbearance Plan." *Id.*, Exh. 9 at 1. Under the terms of the new Forbearance Plan, Bocci was required to make six monthly payments of $909.44 from February 1, 2018, to July 1, 2018, "in lieu of [her] regular monthly mortgage payment." *Id.* The Forbearance Letter warned that if Bocci failed to make any of those reduced monthly payments, the "offer will be revoked and [Nationstar] may refer [her] mortgage to foreclosure." *Id.* The Forbearance Letter also noted that because Bocci would be making reduced payments for six months, she would "become delinquent on [her] mortgage." *Id.* But even so, the letter assured: "We will not refer your loan to foreclosure or proceed to foreclosure sale during this Forbearance Plan, provided you are complying with the terms of the Forbearance Plan." *Id.* at 2. And the Forbearance Letter also reaffirmed that Bocci "may make the Forbearance Plan payment instead of the payment required under [her] loan documents." *Id.* Finally, the Forbearance Letter noted that Nationstar would provide Bocci with "information on alternatives that may be available to [her] at the end of the Forbearance Plan term, such as a reinstatement, repayment plan or other alternative to foreclosure, such as a loan modification." *Id.*

On February 1, 2018, Bocci made the first reduced payment called for by the Forbearance Plan. Am. Compl. ¶ 35. The next day, however, she received a letter from Nationstar indicating

that her $909.44 payment had been placed in an "unapplied funds account" because the payment was "insufficient to be applied as a full payment" toward her balance. *Id.* ¶ 36, Exh. 10 at 1. Bocci also attempted to make reduced payments under the Forbearance Plan on March 1 and March 30, but received similar letters both times rejecting her payments as insufficient. Am. Compl. ¶¶ 39-42. Meanwhile, Bocci "began receiving demand letters and collection calls from Nationstar" despite her attempts to comply with the Forbearance Plan's payment schedule. *Id.* ¶ 38. Eventually, on May 6, 2018, Nationstar stopped accepting Bocci's reduced payments altogether, and later credited back two further payments that Bocci timely made on May 1 and June 1 of that year. *Id.* ¶ 49. Then, on May 14, 2018, Bocci received a letter from Nationstar dated April 16, 2018, stating that her participation in the Forbearance Plan had been approved in error because, in fact, Nationstar had lacked "the required investor approval." *Id.* ¶ 50. And despite Bocci having received no previous acceptance of her December 2017 loan modification application, the April 16 letter also stated that Bocci had been "approved for the Standard Modification Program on January 11, 2018, by error." *Id.*, Exh. 15 at 1. Later, in mid-June 2018, Bocci attempted to make the May 1 and June 1 payments again, but Nationstar once more credited those payments back to Bocci's bank account. Am. Compl. ¶¶ 59-60. Also, on July 14, 2018, Bocci received another letter from Nationstar claiming that she had been erroneously approved for the Forbearance Plan and stating that Nationstar would refuse to accept her reduced payments. *Id.* ¶ 62.

Despite Bocci's efforts to adhere to the terms of the Forbearance Plan, Nationstar referred her home for foreclosure in June 2018. *Id.* ¶ 212. Deutsche Bank then formally initiated foreclosure proceedings against Bocci on December 12, 2018, through the filing of a Mortgage Foreclosure Complaint in New York state court. *See Deutsche Bank Nat'l Tr. Co. v. Bocci*, Index No. 850340/2018, Dkt. 2 (N.Y. Sup. Ct. Dec. 12, 2018). As part of those proceedings, Deutsche

Bank filed a Notice of Pendency, traditionally referred to as a *lis pendens*, with the court and directed the County Clerk to record the notice against Bocci's property. *See id.*, Dkt. 3. On August 22, 2022, Deutsche Bank moved to discontinue the proceedings, which the court granted. Am. Compl. ¶ 231. Deutsche Bank then commenced a new state court foreclosure proceeding against Bocci on September 26, 2023. *See Deutsche Bank Nat'l Tr. Co. v. Bocci*, Index No. 159458/2023, Dkt. 1 (N.Y. Sup. Ct. Sept. 26, 2023). Those proceedings remain ongoing.

Meanwhile, beginning in July 2018, Bocci sent various written requests for information to Nationstar in connection with her mortgage. Am. Compl. ¶ 64. Through various representatives, Bocci sent those requests on the following dates: July 20, 2018, *id.*, Exh. 20, August 20, 2018, *id.*, Exh. 21, September 14, 2018, *id.*, Exh. 25, October 16, 2018, *id.*, Exh. 27, May 2, 2019, *id.*, Exh. 38, November 13, 2020, *id.*, Exh. 53, January 28, 2021, *id.*, Exh. 55, and June 28, 2021, *id.*, Exh. 64. Bocci characterizes each of these communications as a Qualified Written Request ("QWR") pursuant to Section 2605 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e)(1). Am. Compl. at 10.

Finally, Bocci claims that she suffered various harms because of Defendants' conduct. These harms include incurring costs and legal fees in defending against the foreclosure of her home and sending QWRs, experiencing a decline in her credit score, loss of one of her credit card accounts, reduced ability to access new lines of credit, missing out on various business opportunities, damage to her reputation, and emotional and physical distress caused by the stress of dealing with the foregoing events. *See, e.g.*, *id.* ¶ 264.

## B.    Procedural History

Bocci commenced this action against Nationstar and Deutsche Bank on February 28, 2023. Dkt. 1. Through an 81-page, 467-paragraph Amended Complaint that she filed on April 13, 2023,

Bocci alleges dozens of federal and state law claims against both Defendants broadly seeking relief in connection with Nationstar's servicing of her mortgage loan and Deutsche Bank's conduct in attempting to foreclose on her home.  Dkt. 14.[2]  As construed by Judge Parker in her Report and Recommendation,[3] Bocci's causes of action (which are pleaded in a largely undifferentiated manner) include federal claims under various provisions of RESPA, the Truth in Lending Act ("TILA"), the Fair Credit Reporting Act ("FCRA"), the Consumer Financial Protection Act ("CFPA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), as well as their implementing regulations.  R&R at 12.  The Amended Complaint also pleads state law claims arising under New York General Business Law Sections 349 and 350, New York Banking Law 12-D Section 419, New York Banking Law Section 9-x, and New York Real Property Law Section 254-b.  *Id.* at 12-13.  Finally, Bocci also alleges common law claims for breach of contract, malicious prosecution, fraud, defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence.  *Id.*[4]

On December 15, 2023, Defendants moved to dismiss the Amended Complaint for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).  Dkt. 47.  Bocci opposed that motion on March 12, 2024, Dkt. 50, and Defendants filed their reply the following month, Dkt. 53.

---

[2] Bocci also moved for a preliminary injunction to prevent Defendants from foreclosing on her home, Dkt. 3, which the Court denied on July 7, 2023, Dkt. 32.

[3] The parties do not contest Judge Parker's basic characterization of Bocci's causes of action.

[4] The parties do not dispute that New York law applies to each of Bocci's common law claims.

On June 28, 2024, Judge Parker issued a Report and Recommendation on Defendants' motion to dismiss, recommending that the motion be granted in part and denied in part. R&R at 1. Judge Parker observed that Bocci conceded in her opposition to Defendants' motion that her FDCPA and malicious prosecution claims failed as a matter of law and concluded that neither the CARES Act nor the CFPA afford a private right of action, and accordingly recommended dismissal of those claims with prejudice. *Id.* at 15, 29, 55. As to Bocci's other federal causes of action, Judge Parker recommended dismissing without prejudice her claims under TILA, the FCRA,[5] and Section 2605(e)(1)-(2) of RESPA to the extent that those claims fell within the applicable statutes of limitations.[6] *Id.* at 54-55. Judge Parker also recommended dismissal without prejudice of most of Bocci's common law causes of action, namely, her claims for breach of contract as to Nationstar's alleged promise to offer her a standard loan modification, fraud, defamation,[7] intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. *Id.* Further, Judge Parker recommended dismissal without prejudice of Bocci's statutory claims under Sections 349 and 350 of the New York General Business Law and Section 254-b of the New York Real Property Law. *Id.* at 37-42, 44. And as to Bocci's claims under the New York Banking Law, Judge Parker recommended dismissal with prejudice. *Id.* at 42-44.

But Judge Parker recommended denying Defendants' motion to dismiss as to Bocci's claim under Section 2605(e)(3) of RESPA related to her June 28, 2021 QWR and her claim under one

---

[5] As to the portion of Bocci's FCRA claim under 15 U.S.C. § 1681s-2(a), Judge Parker recommended dismissal with prejudice because there is no private right of action for violations of that provision. R&R at 25.

[6] Judge Parker recommended dismissal with prejudice of the time-barred portions of Bocci's claims. R&R at 54.

[7] To the extent that some portions of Bocci's defamation claim were preempted by the FCRA, Judge Parker recommended dismissal with prejudice. R&R at 49.

of the statute's implementing regulations, 12 C.F.R. § 1024.41.  R&R at 22-24.  Likewise, Judge Parker recommended denying Defendants' motion to dismiss as to Bocci's breach of contract claims based on Nationstar's alleged failure to honor the Forbearance Plan and on Deutsche Bank's failure to verify certain information before commencing foreclosure proceedings.  *Id.* at 31-34, 37.

On July 22, 2024, Defendants filed objections to Judge Parker's Report and Recommendation.  Dkt. 58 ("Defendants' Objections").  Three days later, Bocci filed objections to the Report and Recommendation as well.  Dkt. 60 ("Bocci Objections").  Soon after, the parties filed responses to each other's objections.  Dkts. 64-65.

## II.  Legal Standard

### A.    Standard of Review

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" in a report and recommendation.  28 U.S.C. § 636(b)(1)(C).  If, as here, a party submits a timely objection to any part of the magistrate judge's disposition, the district court will conduct a *de novo* review of the contested section.  *See* Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  "The district court may adopt those portions of the report and recommendation to which no specific written objection is made, so long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law."  *Diaz v. Comm'r of Soc. Sec. Admin.*, No. 22 Civ. 2256 (KMK) (VR), 2023 WL 6390172, at *1 (S.D.N.Y. Sept. 29, 2023) (internal quotation marks and alterations omitted).

### B.    Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp.*, *PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009). Moreover, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012) (internal quotation marks omitted). But this liberal treatment is not boundless. *See Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 428 (S.D.N.Y. 2017) ("[T]he liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." (internal quotation marks omitted)); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (internal quotation marks omitted)).

### III.  Bocci's Objections

Bocci's objections are at times difficult to understand, and as to many of her claims she appears only to be requesting a further opportunity to amend her complaint rather than identifying specific aspects of Judge Parker's Report and Recommendation that she believes are erroneous. As a *pro se* party, however, Bocci's objections are "accorded leniency" and will be "construed to

raise the strongest arguments that they suggest." *Little v. Comm'r of Soc. Sec.*, No. 20 Civ. 5431 (JPC) (RWL), 2021 WL 5233563, at *1 (S.D.N.Y. Nov. 10, 2021) (internal quotation marks omitted). "Nonetheless, even a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate[ judge]'s proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Machicote v. Ercole*, No. 06 Civ. 13320 (DAB) (JCF), 2011 WL 3809920, at *2 (S.D.N.Y. Aug. 25, 2011) (internal quotation marks omitted).

## A.    General Statute of Limitations Objection

In narrowing the scope of Bocci's claims, Judge Parker relied on various statutes of limitations that apply to Bocci's federal causes of action. *See, e.g.*, R&R at 19-20 (concluding that the majority of Bocci's claims involving her QWRs are time-barred under RESPA's three-year statute of limitations (citing 12 U.S.C. § 2614)). At the outset, Bocci levies a broad objection to Judge Parker's application of those statutes of limitations, arguing that the Court should toll the limitations periods applicable to her federal claims under two theories.

First, Bocci "propose[s] reverse application" of the Supreme Court's decision in *Artis v. District of Columbia*, 583 U.S. 71, 74-75 (2018), which held that the supplemental jurisdiction statute's tolling provision, 28 U.S.C. § 1367(d), pauses the statute of limitations clock on pendent state law claims while they remain in federal court. *See* Bocci Objections ¶ 2. In other words, whereas *Artis* tolls certain state law claims pending in federal court, Bocci argues that the Court should toll her *federal* claims to the extent that she timely raised them as defenses in the *state* foreclosure proceedings. Bocci Objections ¶ 2. But as Judge Parker explained, the tolling principle adopted in *Artis* was based on the language of a specific federal statute, Section 1367(d), that requires tolling in the context of pendent state law claims brought in federal court. R&R at

20-21. The Court cannot "reverse appl[y]" *Artis* in the absence of a similar statutory provision that provides for the tolling of federal claims brought in state court, which Bocci appears to concede does not exist.

Bocci's alternative request for equitable tolling, Bocci Objections ¶ 3, fares no better. The Supreme Court has made clear that "a litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (internal quotation marks omitted); *see also Blue Angel Realty, Inc. v. United States*, 645 F. Supp. 3d 303, 307 (S.D.N.Y. 2022). Bocci's suggestion that "knowledgeable attorneys informed [her] that [she] would not be able to bring a federal case with such claims during the ongoing state action," Bocci Objections ¶ 2, does not establish that she was prevented from timely filing her claims in federal court by circumstances that were "both extraordinary *and* beyond [her] control," *Menominee Indian Tribe of Wis.*, 577 U.S. at 257. Instead, those circumstances support, at most, the sort of "garden variety claim of excusable neglect" that is insufficient to invoke equitable tolling of a federal statute of limitations. *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990); *cf. Williams v. Tech Mahindra (Ams.) Inc.*, 70 F.4th 646, 651 (3d Cir. 2023) (explaining that "not every poor choice by a lawyer or law firm that lands a party in the wrong forum merits equitable tolling" (internal quotation marks omitted)).

For these reasons, the Court overrules Bocci's objection to Judge Parker's refusal to toll the various statutes of limitations applicable to her federal claims.

**B.    Federal Law Claims**

As relevant to Bocci's Objections, Judge Parker's Report and Recommendation recommended dismissal of Bocci's claims under RESPA relating to Defendants' responses (or lack thereof) to her eight QWRs, her claim under the FCRA concerning Defendants' alleged failure to conduct a reasonable investigation in response to a dispute notice received from a credit reporting agency, and her claims under TILA.  R&R at 16-22, 25-28.  The Court addresses each in turn.

**1.    RESPA (12 U.S.C. § 2605(e)(1)-(2))**

Bocci first objects to Judge Parker's recommendation to dismiss her RESPA claims based on Defendants' (presumably, primarily Nationstar's) alleged failure to adequately respond (or respond at all) to her eight QWRs.  Bocci Objections ¶ 4.  As relevant to this claim, Section 2605(e) of RESPA and its implementing regulations allow borrowers to submit QWRs to the party responsible for servicing their mortgage loan requesting information regarding loan-servicing matters or providing notice that their account is in error.  12 U.S.C. § 2605(e)(1); 12 C.F.R. § 1024.35-36.  Once a QWR is received, the loan servicer has five days to acknowledge receipt of the request and thirty days to respond to it.  12 U.S.C. § 2605(e)(1)(A), (e)(2).  In responding to a QWR, RESPA directs the servicer to, among other things and as applicable, "make appropriate corrections in the account of the borrower," provide a statement of reasons why the servicer believes the borrower's account to be correct, and either furnish "information requested by the borrower or an explanation of why the information requested is unavailable."  *Id.* § 2605(e)(2).

RESPA affords borrowers a private right of action for a servicer's failure to adequately respond to a proper QWR.  Specifically, the statute allows a borrower to recover "any actual damages to the borrower as a result of the failure" or, "in the case of a pattern or practice of

noncompliance," statutory damages of up to $2,000. *Id.* § 2605(f)(1). Critically, to state a claim relating to a servicer's failure to comply with QWR requirements, the borrower "must allege injury and resulting damages that are proximately caused by the loan servicer's failure to adhere to its obligations under § 2605—i.e., the timing and form of [the servicer's] responses to [the borrower's] QWRs." *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 264 (S.D.N.Y. 2017) (quoting *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10 Civ. 3291 (NGG) (SMG), 2014 WL 4742509, at *5 (E.D.N.Y. Sept. 23, 2014)); *see also Lau v. Specialized Loan Servicing, LLC*, No. 23 Civ. 1385 (JPC) (GWG), 2024 WL 3219810, at *8 (S.D.N.Y. June 28, 2024) (observing that "an allegation of actual damages is necessary to state a claim for liability" under Section 2605 (quoting *Dolan v. Select Portfolio Servicing*, No. 03 Civ. 3285 (PKC), 2016 WL 4099109, at *5 (E.D.N.Y. Aug. 2, 2016))); *Rosendale v. Mr. Cooper Grp. Inc.*, No. 19 Civ. 9263 (NSR), 2021 WL 4066821, at *12 (S.D.N.Y. Sept. 7, 2021) ("[A] plaintiff seeking actual damages under § 2605 must allege that the damages were proximately caused by the defendant's violation of RESPA." (internal quotation marks omitted)). And for such an action to be timely, a borrower must commence it "within 3 years . . . from the date of the occurrence of the violation." 12 U.S.C. § 2614.

Here, the Court agrees with Judge Parker that Bocci's RESPA claims based on all but the last three QWRs she sent are plainly time-barred. R&R at 19-20. The thirty-day time periods for a response to the earlier five QWRs, the latest of which was sent in July 2019, all expired well outside the three-year statute of limitations given Bocci's filing of this action in February 2023. Accordingly, it is only necessary to consider whether Bocci has otherwise stated a claim for relief as to the three most recent QWRs—those sent on November 13, 2020, January 28, 2021, and June 28, 2021.

As to those three QWRs, the Court agrees with Judge Parker that Bocci's Amended Complaint fails to plausibly allege that Defendants' responses to those requests (or lack thereof) proximately caused Bocci's claimed damages. The November 13 and January 28 QWRs, which are substantially identical, requested seventeen categories of information relating to Bocci's mortgage loan, including copies of mortgage origination documents, Bocci's payment history, the current balance of Bocci's account, and copies of any servicing agreements that gave Nationstar the right to service Bocci's loan. Am. Compl., Exhs. 53, 55. The June 28 QWR listed twenty-four categories of information, many of which referred to or incorporated prior requests, and points out where (in Bocci's view) Defendants' prior QWR responses were inadequate. *Id.*, Exh. 64. Based on Defendants' alleged failure to fully respond to her QWRs, Bocci claims damages for legal expenses in connection with the foreclosure of her home, a reduction in her credit score, loss of access to credit, emotional harm, and various other injuries. Am. Compl. ¶ 264. As Judge Parker explained, however, Bocci's Amended Complaint fails to "connect the dots as to why [her alleged damages] were caused by Nationstar not adequately responding to her QWRs." R&R at 18. That is, the Amended Complaint contains no factual support for Bocci's claim that particular deficiencies in Defendants' responses to the QWRs—as opposed to her defaulting on her mortgage and being subjected to foreclosure proceedings—caused her alleged injuries.

Instead, the thrust of Bocci's damages theory, which she repeats in her Objections, seems to be that she was harmed by Nationstar's decision not to modify her loan and Defendants' subsequent efforts to initiate foreclosure proceedings, not the timing or content of their responses to her QWRs. Bocci Objections ¶ 5. But RESPA requires plausible factual allegations indicating that the harm Bocci suffered was proximately caused by specific problems with Defendants' QWR responses. *See Sutton*, 228 F. Supp. 3d at 264 (collecting cases which hold that demonstrating

14

proximate cause is a requirement of a RESPA claim).  And given the operation of the statute of limitations in this case, any damages Bocci experienced must have been specifically caused by the nature of Defendants' responses (or lack thereof) to her three most recent QWRs.  *See* 12 U.S.C. § 2614 (stating that the three-year limitations period runs "from the date of the occurrence of the violation").  So without nonconclusory factual allegations identifying the deficiencies in the most recent three QWRs and plausibly connecting *those shortcomings* to actual harms experienced by Bocci, the Amended Complaint fails to adequately allege the proximate cause element of her RESPA claim.  *See, e.g.*, *Gorbaty*, 2012 WL 1372260, at *5 (dismissing a RESPA claim where the plaintiff "provide[d] no factual allegation linking her alleged harms to [her servicer's] failure to timely respond to her QWRs" and was unable to "explain how [her] problems were caused specifically by [the servicer's] alleged § 2605 violations").

Accordingly, the Court adopts Judge Parker's recommendation to dismiss with prejudice Bocci's RESPA claim to the extent it hinges on the first five QWRs and to dismiss the claim without prejudice to the extent that it depends on the three most recent QWRs.

### 2.  FCRA (15 U.S.C. § 1681s-2(b))

Judge Parker construed Bocci's Amended Complaint as asserting a cause of action under a provision of the FCRA that requires furnishers of credit information to investigate consumer disputes forwarded to them by reporting agencies, 15 U.S.C. § 1681s-2(b).  R&R at 25-27. Specifically, Section 1681s-2(b) requires furnishers like Nationstar, upon receiving a notice of a credit dispute from a credit reporting agency, to "conduct an investigation with respect to the disputed information," among other things.  15 U.S.C. § 1681s-2(b)(1).  To state a claim under this provision, the plaintiff must allege "that (1) a furnisher received notice of a credit dispute from a [credit reporting agency] (as opposed to from the consumer alone) and (2) the furnisher

negligently or willfully failed to conduct a reasonable investigation." *Lewis v. Navy*, No. 21 Civ. 9131 (LTS), 2022 WL 329195, at *2 (S.D.N.Y. Feb. 2, 2022) (internal quotation marks omitted). In her Report and Recommendation, Judge Parker concluded that Bocci's "claim under this provision of FCRA fails because she does not allege that the credit reporting agencies advised Defendants that [Bocci] was disputing her credit report." R&R at 26; *see id.* ("Plaintiff nowhere alleges that Defendants received notice from a consumer reporting agency that Plaintiff disputed the accuracy of the information reported."). But, because it appeared possible that Bocci could plead additional facts showing that Nationstar received such notice from a credit reporting agency, Judge Parker recommended that the FCRA claim be dismissed without prejudice. *Id.* at 27.

Although Bocci identifies the FCRA claim as a subject of her Objections, she does not dispute Judge Parker's conclusion that the Amended Complaint, as pleaded, fails to plausibly allege the notice element to support her claim. Bocci Objections ¶¶ 7-9. Instead, the portion of Bocci's Objections directed at the FCRA claim only seeks to "clarify [her] FCRA claims so as to satisfy the pleading requirements" highlighted in the Report and Recommendation. *Id.* ¶ 7. To that end, Bocci explains that she "filed a formal dispute with the three credit bureaus regarding the inaccurate information reported by Nationstar" on May 31, 2019, and that the credit bureaus "informed [her] that they had notified Nationstar" of that dispute. *Id.* ¶ 8. She contends, however, that "[d]espite receiving notice of the dispute from the credit bureaus, Nationstar willfully failed to conduct a reasonable investigation" as required under the FCRA. *Id.* But these allegations appear in Bocci's Objections—not her Amended Complaint—and the Court agrees with Judge Parker that the Amended Complaint itself does not plausibly allege that Nationstar failed to conduct a reasonable investigation in response to receiving notice of a credit dispute from a

reporting agency. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 306 F. Supp. 3d 610, 625 (S.D.N.Y. 2018) (observing that "a party cannot amend its pleadings through a brief").

Accordingly, the Court adopts Judge Parker's recommendation to dismiss Bocci's FCRA claim without prejudice.

### 3. TILA

Judge Parker also recommended dismissal without prejudice of Bocci's claims arising under TILA's information disclosure provisions. R&R at 27-28. Those provisions require lenders to "provide an array of 'clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights.'" *Gorbaty*, 2014 WL 4742509, at *11 (quoting *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998)); *see also* 15 U.S.C. § 1638(a) (listing categories of information required to be disclosed by creditors).

Judge Parker determined, and the Court agrees, that the Amended Complaint's allegations of Defendants' noncompliance with TILA's disclosure requirements lack plausible factual support. *See* R&R at 27. Although Bocci sporadically refers to TILA throughout the Amended Complaint, her pleading does not allege what information required to be disclosed Defendants failed to supply. As Judge Parker explained, that is fatal: to state a claim for relief under TILA, the plaintiff must allege facts that plausibly show noncompliance with the statute's requirements, such as by indicating what necessary information the defendant failed to disclose. *See, e.g.*, *Rosario v. Santander Consumer USA*, No. 22 Civ. 10565 (LTS), 2023 WL 35239, at *3 (S.D.N.Y. Jan. 3, 2023) (dismissing a TILA claim where it was "unclear from [the plaintiff's] allegations what Defendant did to mislead Plaintiff or what information it failed to disclose"); *Estes v. Toyota Fin. Serv.*, No. 14 Civ. 1300 (JFB) (SIL), 2015 WL 3830350, at *5 (E.D.N.Y. June 22, 2015) (dismissing a TILA claim where the plaintiff failed to "identify anywhere in the amended

complaint what material disclosures defendant failed to provide to her").  In her Objections, Bocci does not argue that Judge Parker erred in concluding that the Amended Complaint failed to plausibly allege a TILA violation, and instead requests leave to amend her pleading in order to "satisfy the pleading requirements" described in the Report and Recommendation.  Bocci Objections ¶ 10.

The Court, therefore, adopts Judge Parker's recommendation to dismiss Bocci's TILA claim without prejudice.

**C.    State Law Claims**

Judge Parker recommended dismissal of the majority of Bocci's state law causes of action. As relevant to Bocci's Objections, these included her claim for breach of contract as to Nationstar's alleged promise to grant Bocci a standard loan modification, Bocci's claim under New York General Business Law Section 349, her claims under New York Banking Law 12-D Section 419 and New York Banking Law Section 9-x, and her claims for common law fraud and defamation. R&R at 34-49.

**1.    Breach of Contract (Standard Loan Modification)**

Although Judge Parker concluded that Bocci plausibly alleged a claim for breach of contract as to the Forbearance Plan that Nationstar allegedly offered her in January 2018, Judge Parker recommended dismissal of the claim insofar as it alleged that Nationstar also breached a promise to provide Bocci with a standard loan modification at the end of the Plan's reduced-payment period.  R&R at 29-37.  Bocci objects to the Report and Recommendation's treatment of the standard loan modification claim on several grounds.

First, Bocci challenges Judge Parker's conclusion that the April 16, 2018 "error letter" Bocci received from Nationstar did not evidence a contract between the parties for a standard loan

18

modification.  Bocci Objections ¶ 17.  The April 16 letter, as Bocci points out, stated: "Our records indicate that [your] account was approved for the Standard Modification Program on January 11, 2018, by error."  Am. Compl., Exh. 15 at 1.  Bocci contends that the letter's recognition of an erroneous approval, phrased in the past tense, "can only be construed to mean that [Nationstar] finalized their decision to approve granting [her] a standard loan modification."  Bocci Objections ¶ 17.  According to Bocci, therefore, the letter "can be construed as a promise by Nationstar" that it would allow her to modify the terms of her mortgage loan at the end of the Forbearance Plan. *Id.*

But as Judge Parker explained, these allegations fail to plausibly establish that an enforceable contract to modify Bocci's loan existed between the parties because Bocci has not pleaded a definite offer and acceptance of a contract that contained a promise by Defendants to modify her loan.  *See* R&R at 34.  In assessing whether an enforceable contract has been formed, "[t]he first step . . . is to determine whether there is a sufficiently definite offer such that its unequivocal acceptance will give rise to an enforceable contract."  *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 715 N.E.2d 1050, 1053 (N.Y. 1999).  And for bilateral contracts, "it is essential . . . that the fact of acceptance be communicated to the offeror."  *Agric. Ins. Co. v. Matthews*, 749 N.Y.S.2d 533, 535 (1st Dep't 2002).

Here, the fatal flaw in Bocci's standard loan modification theory is that none of the documents she identifies can be construed either as a definite offer on Nationstar's part to modify her loan or, assuming instead that Bocci's December 2017 loan modification application qualifies as the "offer" for the modification, an "unequivocal acceptance" of that offer on Nationstar's part that the company communicated to Bocci.  Far from constituting an offer or an acceptance to that effect, the April 16, 2018 letter expressly stated that Nationstar would be "unable to move forward

19

with a modification." Am. Compl., Exh. 15 at 1. And while Bocci is correct that the letter suggests that Nationstar had *previously* approved her application for a loan modification, an acceptance of a bilateral contract must be communicated to the offeror to be binding. *See Agric. Ins. Co.*, 749 N.Y.S.2d at 535. Such a contract cannot be formed in secret without the awareness of all parties to it. Without plausible allegations of an offer and acceptance of a contract that included as one of its terms a promise on Nationstar's part to modify Bocci's loan, this aspect of her contract claim must be dismissed.

In an effort to salvage this part of her breach of contract claim, Bocci also argues that Nationstar offered to grant her a loan modification when, in April and June 2018, two Nationstar representatives told her over the phone that she would receive a loan modification agreement upon her successful completion of the Forbearance Plan. Bocci Objections ¶ 18; Am. Compl. ¶¶ 47, 61. Judge Parker correctly rejected this argument. Under New York's Statute of Frauds, "a modification of a mortgage . . . must be in writing to be enforceable." *Pappas v. Resol. Tr. Corp.*, 682 N.Y.S.2d 494, 496 (4th Dep't 1998) (citing N.Y. Gen. Oblig. Law § 5-703(1)). Whether Bocci's oral conversations with Nationstar's representatives are characterized as the putative modification itself or as an agreement to offer a modification sometime in the future, the result is the same: given the absence of a writing, the Statute of Frauds renders those conversations ineffective to obligate Nationstar to modify Bocci's mortgage loan. *Cf. Redjai v. Bank of Am., N.A.*, No. SACV-15-427-AG, 2015 WL 13918004, at *3-4 (C.D. Cal. Aug. 4, 2015) (applying California's Statute of Frauds in a similar context).

Accordingly, the Court adopts Judge Parker's recommendation to dismiss without prejudice the aspect of Bocci's breach of contract claim that concerns a loan modification.

### 2. New York General Business Law Section 349

Bocci also argues that Judge Parker erred in recommending dismissal of her claim under New York General Business Law Section 349. Bocci Objections ¶¶ 26-32; *see* R&R at 37-41. Section 349 is a provision of New York's consumer protection statute that broadly outlaws "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," N.Y. Gen. Bus. Law § 349(a), and affords a private right of action for injunctive and monetary relief, *id.* § 349(h). To state a claim for relief under Section 349, the plaintiff must allege "three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004) (quoting *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000)). But what sets Section 349 apart from many other consumer protection statutes is the requirement to allege consumer-oriented conduct on the part of the defendant; that is, allegations "showing injury or potential injury to the public," as opposed to injury only to the plaintiff herself. *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 65 (2d Cir. 2010); *see also Plavin v. Grp. Health Inc.*, 146 N.E.3d 1164, 1169 (N.Y. 2020) ("[A] General Business Law § 349 claim does not lie when the plaintiff alleges only a private contract dispute . . . which is unique to the parties, not conduct which affects the consuming public at large . . . ." (internal quotation marks and alteration omitted)); *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 772 (2d Dep't 1995) ("[T]he deceptive act or practice may not be limited to just the parties."). In determining whether the alleged misconduct was sufficiently consumer-oriented, courts have considered "whether the operative transaction: (1) affected a broad swath of consumers, (2) consisted of standard practices that necessarily affect numerous consumers, or (3)

is unique to the parties." *Rosendale v. Mr. Cooper Grp. Inc.*, No. 19 Civ. 9263 (NSR), 2021 WL 4066821, at *19 (S.D.N.Y. Sept. 7, 2021).

As construed by Judge Parker, Bocci's Amended Complaint alleges that Defendants violated Section 349 by "erroneously terminating the . . . Forbearance Plan, delaying and thwarting Plaintiff's loan modification attempts, dual tracking foreclosure and considering her for loan modification, reporting false negative information about her to credit reporting agencies and others, and persisting in such activities." R&R at 37 (citing Am. Compl. ¶¶ 316, 444). Judge Parker, however, concluded that Bocci's allegations failed to identify any consumer-oriented conducted on Defendants' part. *Id.* at 38-40. According to Judge Parker, Bocci's allegations "are specific to the handling of her mortgage and her subsequent attempts to obtain forbearance and loan modifications," and therefore "do not impact a wide swath of consumers." *Id.* at 39. And although Bocci referred to Nationstar's "record of unlawful pattern and practices in mortgage servicing in general" and past settlements with various consumer protection agencies, Am. Compl. ¶ 294, Judge Parker held that "these allegations are vague and do not speak to specific practices that impacted both [Bocci] and consumers at large," R&R at 39. Thus, Judge Parker recommended dismissal of Bocci's Section 349 claim for failure to plausibly allege consumer-oriented conduct. *See id.* at 41.

In her Objections to the Report and Recommendation's treatment of her Section 349 claim, Bocci largely repackages the same arguments she presented to Judge Parker the first time around, namely, that she adequately alleged consumer-oriented conduct by pointing to lawsuits and settlements involving Nationstar and the Consumer Financial Protection Bureau. *See* Bocci Objections ¶¶ 27-29. But because Bocci merely reiterates her original arguments in support of her Section 349 claim, the Court's review is for clear error only. *See IndyMac Bank, F.S.B. v. Nat'l*

*Settlement Agency, Inc.*, No. 07 Civ. 6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y.

Nov. 3, 2008) ("To the extent . . . that the party . . . simply reiterates [her] original arguments, the

Court will review the Report strictly for clear error.").  And the Court's review of the Report and

Recommendation does not show that Judge Parker clearly erred in holding that the Amended

Complaint failed to plausibly allege consumer-oriented conduct based on Bocci's general

references to prior enforcement actions involving Nationstar, without tying specific practices that

were common in those cases to her case.  The Court, however, also agrees with Judge Parker that

Bocci may very well be able to further amend her pleading to draw the requisite connection

between Defendants' alleged misconduct concerning her mortgage and more specific examples of

Defendants' consumer-oriented conduct affecting the public more broadly, and therefore adopts

Judges Parker's recommendation to dismiss the Section 349 claim without prejudice.

### 3.  New York Banking Law 12-D Section 419

Judge Parker recommended dismissal with prejudice of Bocci's claim arising under New

York Banking Law 12-D Section 419 on the ground that this provision was repealed almost ninety

years ago.  R&R at 42; *see Colfin Metro Funding LLC v. Rojas*, No. 703458/2013, 2014 WL

4063600, at *6 (N.Y. Sup. Ct. July 28, 2014) (noting that Section 419 was repealed in 1939).

Bocci does not argue otherwise in her Objections, Bocci Objections ¶ 33, and the Court agrees that

Bocci cannot maintain a claim under this defunct provision.  Bocci does, however, state that her

references in the Amended Complaint to Section 419 were by mistake and that she instead intended

to rely on 3 N.Y.C.R.R. Pt. 419.  Bocci Objections ¶ 33.  Although the Amended Complaint

references 3 N.Y.C.R.R. Pt. 419 in a couple places already, Am. Compl. ¶¶ 8, 313, Bocci does not

argue that the Amended Complaint in its current form plausibly alleges a claim under that

provision.  Accordingly, the Court will adopt Judge Parker's recommendation to dismiss the

erroneous Section 419 claim with prejudice and permit Bocci to amend her complaint to develop a claim under 3 N.Y.C.R.R. Pt. 419 instead if she wishes.

### 4. New York Banking Law Section 9-x

Bocci further alleges that Nationstar violated New York Banking Law Section 9-x by failing to provide her with adequate "forbearance relief" from her mortgage loan payments. Am. Compl. ¶ 312; R&R at 43. The State of New York enacted Section 9-x on June 17, 2020, to provide forbearance relief and foreclosure protection to mortgagors who were suffering demonstrable hardship because of the COVID-19 pandemic. *See* N.Y. Banking Law § 9-x. Consistent with that purpose, however, New York courts have recognized that Section 9-x "does not apply to mortgages which were already in foreclosure when the law was enacted." *Wells Fargo Bank, N.A. v. Kelsey*, No. 2018-50490, 2021 WL 1080836, at *1 (N.Y. Sup. Ct. Mar. 16, 2021); *see also Money Source, Inc. v. Mevs*, 129 N.Y.S.3d 643, 647 (N.Y. Sup. Ct. 2020) ("There is little doubt that the new statute is designed to only address mortgages affected by the COVID-19 pandemic and should not apply to borrowers who defaulted before the start date of March 7, 2020."). Applying that rule, Judge Parker concluded that because Bocci defaulted on her mortgage (and went into foreclosure) well before the onset of COVID-19, she could not invoke Section 9-x's protections. R&R at 43-44.

Through her Objections, Bocci advances substantially the same arguments that Judge Parker already rejected. She reiterates that Nationstar's alleged breach of contract "left the forbearance 'alive' these several years" and that "as such the contract is still considered valid and open." Bocci Objections ¶¶ 36-37. The result, according to Bocci, is that Defendants' "illegal foreclosure" of her home deprived her of the relief she was entitled to under Section 9-x and allows her to bring suit to recover those benefits. *See id.* Bocci, however, identifies no provision of

Section 9-x that would conceivably allow her to proceed under such a theory, nor does she provide any reason to distinguish *Wells Fargo* and *Money Source*. Further, Section 9-x imposes a duty on loan servicers to make forbearance relief available to mortgagors under certain circumstances and allows a mortgagor to raise a violation of that duty as a defense to a foreclosure action, but that provision does not by its terms authorize a civil suit for one in Bocci's position. *See* N.Y. Banking Law § 9-x(4). While it is not necessary to determine whether Section 9-x affords a private right of action under *any* circumstances, the Court sees no error in the Report and Recommendation's analysis of Bocci's Section 9-x claim, and will accordingly adopt Judge Parker's recommendation to dismiss this claim with prejudice given that the statute plainly does not apply to Bocci's circumstances.

### 5. Common Law Fraud

Judge Parker recommended dismissal without prejudice of Bocci's cause of action for common law fraud. R&R at 45-46. To state a claim for fraud under New York law, the plaintiff must plausibly allege "a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *City of Almaty v. Sater*, 503 F. Supp. 3d 51, 61 (S.D.N.Y. 2020) (quoting *Pasternack v. Lab. Corp. of Am. Holdings*, 59 N.E.3d 485, 491 (N.Y. 2016)).

In her Objections, Bocci maintains that the Amended Complaint states plausible claims for fraud based on two allegedly false representations made by Nationstar and Deutsche Bank. First, Bocci maintains that Nationstar fraudulently represented that it required investor approval to grant Bocci a standard loan modification, a theory already considered and rejected by Judge Parker. Bocci Objections ¶ 39. Second, Bocci argues that Deutsche Bank committed fraud by falsely

claiming that she defaulted on her mortgage loan, which formed the basis for its foreclosure action against her home. *Id.* ¶ 41.

Bocci's Objections, however, do not respond to the principal flaw in her fraud claims that Judge Parker identified: a lack of plausible allegations that Bocci herself relied on Defendants' allegedly false statements. *See* R&R at 45-46; *Pasternack*, 59 N.E.3d at 493 ("[A] fraud claim requires the plaintiff to have relied upon a misrepresentation by a defendant to his or her detriment."). As Judge Parker explained, the Amended Complaint does not indicate how Bocci relied on Nationstar's investor-approval representations; in fact, the Amended Complaint suggests that almost from the beginning Bocci was skeptical of Nationstar's claim to need investor approval. *See, e.g.*, Am. Compl. ¶ 20 (alleging that on the same day that Bocci first learned of the purported investor-approval requirement, a Deutsche Bank representative told her that "the sole responsible party for [her] loan modification is Nationstar" and claimed that "the investor does not make any decisions regarding loans"). The same kind of defect dooms Bocci's theory of fraud against Deutsche Bank. Even assuming that Deutsche Bank falsely represented that Bocci had defaulted on her mortgage, the Amended Complaint alleges no facts indicating that Bocci herself (as opposed to third parties) justifiably relied on that statement to her detriment. Simply put, what the Amended Complaint lacks are factual allegations that indicate how Bocci changed her behavior in response to believing Defendants' alleged misrepresentations. Consequently, Bocci's allegations fall short of stating plausible claims for fraud under New York law. *See, e.g.*, *SRM Glob. Master Fund Ltd. v. Bear Stearns Cos.*, 829 F.3d 173, 178 (2d Cir. 2016) (affirming the dismissal of a fraud claim where the plaintiff failed to identify "any part of its complaint that adequately alleges reliance on any misrepresentations").

The Court therefore adopts Judge Parker's recommendation to dismiss Bocci's fraud claims without prejudice.

### 6. Defamation

Through her Amended Complaint, Bocci alleged that Defendants defamed her by:

> (1) willfully making written statements about [her] they knew were false to third party credit reporting agencies, (2) willfully making written statements about [her] they knew were false to county property databases in filing *lis pendens* of a foreclosure they knew was wrongful, [] (3) giving, or causing to be given, inaccurate credit reporting about [her] to others as yet unknown to [her], and (4) willfully ruining [her] financial reputation based on what they knew was false information.

Am. Compl. ¶ 455.  Judge Parker recommended dismissal of the defamation claim for lack of specificity because the Amended Complaint "provides no details as to the time, place or manner in which the allegedly false statements were made."  R&R at 48.

Bocci challenges one narrow aspect of this recommendation.  That objection is based on her contention that in December 2018, Deutsche Bank "filed a *lis pendens* against [Bocci's] property with the [County Clerk]."  Bocci Objections ¶ 46.  According to Bocci, "[t]he *lis pendens* falsely asserted that [Deutsche Bank] has a legitimate legal claim against [her] property" and made the "factually inaccurate" claim that she had "defaulted on [her] loan leading to [the] foreclosure." *Id.* ¶ 47.  But while the Amended Complaint does allege that Deutsche Bank filed a "baseless *lis pendens* as part of the foreclosure action," Am. Compl. ¶ 350, it nowhere pleads what assertions in the *lis pendens* made it false and defamatory.  Indeed, New York courts routinely reject analogous claims for slander of title and injurious falsehood on the ground that a *lis pendens*, which merely provides notice to the world that a particular property is the subject of ongoing litigation, is "an undeniably true statement," at least in the absence of allegations that in fact such litigation was not pending at the time the *lis pendens* was published.  *Brown v. Bethlehem Terrace Assocs.*, 525 N.Y.S.2d 978, 979 (3d Dep't 1988); *see, e.g.*, *Seidman v. Indus. Recycling Props., Inc.*, 922

N.Y.S.2d 451, 453 (2d Dep't 2011); *Casa de Meadows Inc. (Cayman Islands) v. Zaman*, 908

N.Y.S.2d 628, 633 (1st Dep't 2010); *Alexander v. Scott*, 730 N.Y.S.2d 254, 254 (2d Dep't 2001);

*35-45 May Assocs. v. Mayloc Assocs.*, 557 N.Y.S.2d 41, 42-43 (1st Dep't 1990).  And even if

Bocci could plead that the *lis pendens* was somehow false, the one-year statute of limitations

applicable to defamation actions under New York law, which runs from the date of initial

publication, would render untimely any claim based on Deutsche Bank's filing of the *lis pendens*

in December 2018.  *See Nussenzweig v. diCorcia*, 878 N.E.2d 589, 590 (N.Y. 2007) (citing N.Y.

C.P.L.R. § 215(3)).

The Court therefore adopts Judge Parker's recommendation to dismiss Bocci's defamation

claim without prejudice.

### IV.  Nationstar and Deutsche Bank's Objections

Although Judge Parker recommended dismissal of most of Bocci's claims, she

recommended denying Defendants' motion as to four discrete claims: (1) Bocci's claim that

Defendants violated RESPA by reporting information to credit agencies regarding Bocci's overdue

payments within sixty days of having received notice of a dispute from her, *see* 12 U.S.C.

§ 2605(e)(3); (2) Bocci's claim under 12 C.F.R. § 1024.41 concerning Nationstar's alleged failure

to acknowledge Bocci's submission of a complete loan modification application within the

necessary time-frame; (3) Bocci's breach of contract claim predicated on Defendants' alleged

breach of the Forbearance Letter; and (4) Bocci's breach of contract claim based on Deutsche

Bank's alleged failure to verify certain information prior to commencing the December 2018

foreclosure action.  R&R at 22-24, 31-34, 37.

In their Objections, Defendants challenge Judge Parker's recommended resolution of each

of these claims.  Defendants' Objections at 1.  As to the Section 1024.41 and failure-to-verify

claims, however, Defendants did not properly move to dismiss those claims in the first place. Defendants challenged the Section 1024.41 claim for the first time in their reply brief before Judge Parker and did not contest the failure-to-verify claim until their Objections to the Report and Recommendation. Accordingly, it was not error for Judge Parker to decline to recommend dismissal of those claims. *See In re Dreier LLP*, 462 B.R. 474, 483 n.7 (Bankr. S.D.N.Y. 2011) (declining to consider arguments for dismissal raised for the first time in reply). The Court, therefore, turns to considering Defendants' Objections to Bocci's claim under Section 2605(e)(3) and her claim for breach of contract relating to the Forbearance Letter.

## A.    RESPA (12 U.S.C. § 2605(e)(3))

Defendants object to Judge Parker's recommended denial of their motion to dismiss as to Bocci's claim under RESPA's credit-rating-protection provision. In relevant part, Section 2605(e)(3) of RESPA provides:

> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency . . . .

12 U.S.C. § 2605(e)(3). To state a claim for relief under this provision, a plaintiff must allege "(i) that she sent defendants a qualified written request; (ii) that defendants submitted information regarding plaintiff's overdue payments to a credit reporting agency; and (iii) that defendants submitted such information within 60 days after defendants received plaintiff's qualified written request." *Midouin v. Downey Sav. & Loan Ass'n, F.A.*, 834 F. Supp. 2d 95, 111 (E.D.N.Y. 2011). Defendants did not specifically move to dismiss Bocci's Section 2605(e)(3) claim, so Judge Parker construed their general argument that Bocci's RESPA claims are untimely under the statute's three-year statute of limitations, 12 U.S.C. § 2614, to be directed at Bocci's Section 2605(e)(3) claim as well. R&R at 22-23 (observing that "Defendants make no other argument for dismissal

of this claim"). So construed, Judge Parker rejected Defendants' motion to dismiss as to the Section 2605(e)(3) claim on the ground that Bocci's eighth QWR, which she sent to Nationstar on June 28, 2021, fell within the limitations period and contained language disputing her account. *See* R&R at 23 (explaining that Bocci's June 2021 QWR asserted that Nationstar "made an error in ceasing to accept [Bocci's] forbearance payments" and "create[ed] a fake default on her account" (quoting Am. Compl., Exh. 64)). Because one QWR that could be plausibly read as "relating to a dispute regarding the borrower's payments," 12 U.S.C. § 2605(e)(3), was sent within the limitations period, Judge Parker correctly rejected Defendants' motion to dismiss this claim on statute of limitations grounds. *See Merryman v. J.P. Morgan Chase Bank, N.A.*, 319 F.R.D. 468, 470 (S.D.N.Y. 2017) (explaining that to prevail on a motion to dismiss, a statute of limitations defense must appear on the face of the complaint).

In their Objections, Defendants do not dispute that Judge Parker correctly rejected their statute of limitations argument as to Bocci's Section 2605(e)(3) claim. Instead, Defendants advance two new grounds for dismissing that claim: that Bocci failed to plausibly allege that Nationstar reported information concerning her overdue payments within sixty days of receiving the June 2021 QWR, and that she failed to plausibly allege damages that were proximately caused by the violation. Defendants' Objections at 2. But "new arguments . . . cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Razzoli v. Fed. Bureau of Prisons*, No. 12 Civ. 3774 (LAP) (KNF), 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014). Defendants provide no reason why they could not have presented these same arguments to Judge Parker, so the Court deems those arguments forfeited as to their motion to dismiss. *See United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (deeming an argument forfeited due to a party's "utter failure to raise it before" the

magistrate judge).  Accordingly, to the extent Defendants' new arguments for dismissal of Bocci's Section 2605(e)(3) claim can be considered objections at all, they are overruled.

## B.      Breach of Contract (Forbearance Letter)

Defendants next challenge Judge Parker's recommendation to deny their motion to dismiss as to Bocci's breach of contract claim involving the Forbearance Letter.  Defendants' Objections at 3.  In their Objections, Defendants do not dispute Judge Parker's conclusion that the Amended Complaint sufficiently alleges that the Forbearance Letter reflected a binding contract between the parties and that Nationstar breached the agreement by referring Bocci for foreclosure in June 2018 and refusing to accept her forbearance payments.  *See id.*  Instead, Defendants argue that the Amended Complaint fails to plausibly allege that Bocci suffered any damages as a result of what they characterize as an "internal referral to foreclosure."  *Id.* (arguing that such a referral could have had "no effect" on Bocci).  Defendants also maintain that the Amended Complaint fails to plausibly allege that Nationstar's refusal to accept Bocci's forbearance payments resulted in cognizable damages.  *Id.*

The Amended Complaint, however, alleges that by referring Bocci's home for foreclosure, albeit a foreclosure that occurred months later, Nationstar's breach of the Forbearance Letter resulted in Bocci "having to expend tens of thousands of dollars . . . on legal fees and related expenses."  Am. Compl. ¶ 335.  Bocci also alleges that Nationstar's failure to accept her forbearance payments resulted in "additional interest payments and fees charged" to her, and adversely impacted her credit score.  *Id.*  Judge Parker determined, and the Court agrees, that these allegations are sufficient at the pleadings stage.  *See* R&R at 33.  It is true, as Defendants point out in their Objections, that Bocci's theory of damages is not fully developed.  *See* Defendants' Objections at 3.  Bocci's pleading does not, for example, explain exactly how Nationstar's

rejection of her forbearance payments resulted in higher fees or interest obligations than what she would have otherwise incurred, and the Amended Complaint leaves open the possibility that Deutsche Bank would have commenced the foreclosure proceedings even if Nationstar did not breach its promise to refrain from referring Bocci to foreclosure. *See id.* Likewise, the Amended Complaint does not disentangle the alleged impact of Nationstar's refusal to accept her forbearance payments on Bocci's credit score from her inability to keep up with her payments generally. At the motion to dismiss stage, however, it is not necessary for a plaintiff to "fill in all the blanks as to how [the defendant's] alleged breach resulted in the damages [she] asserts." *Comfort Inn Oceanside v. Hertz Corp.*, No. 11 Civ. 1534 (JG) (JMA), 2011 WL 5238658, at *8 (E.D.N.Y. Nov. 1, 2011). At the motion to dismiss stage, damages need only be plausible, not certain or even likely. And unlike in the case of Bocci's failure to connect her damages to Defendants' responses to her QWRs, *see supra* III.B.1, the Court agrees that the Amended Complaint adequately pleads a link between Bocci's alleged damages and Defendants' breaches of the Forbearance Letter. So while it may be that through discovery Defendants will succeed in disproving Bocci's claimed damages, her allegations are at least sufficient to withstand a motion to dismiss.

Accordingly, the Court overrules Defendants' objection to this aspect of Bocci's breach of contract claim.

* * *

For the reasons stated above, the Court overrules Bocci's and Defendants' objections to Judge Parker's Report and Recommendation. The Court also has conducted a review of the remainder of the Report and Recommendation to which the parties did not object and finds it to be well-reasoned and its conclusions well-founded.

## V.  Leave to Amend

When, as here, a party seeks to amend their complaint, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  In addition, the Second Circuit has cautioned that a "*pro se* plaintiff should ordinarily be allowed to amend [her] complaint at least once before dismissal as long as a liberal reading of the complaint suggests that it may state a claim." *Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002).  Although, technically speaking, Bocci has already amended her complaint once in this case,[8] the Court agrees with the Report and Recommendation that unless otherwise indicated, dismissal of Bocci's claims should be without prejudice and with leave to amend.[9]

The Court, however, admonishes Bocci that the Federal Rules of Civil Procedure require "a *short and plain* statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).   The 467-paragraph Amended Complaint—replete with repetitive, copy-and-pasted allegations and bolstered by hundreds of pages of exhibits of often dubious value—strains Rule 8(d)(1)'s requirement that pleadings and allegations be "simple, concise, and direct."  *See* R&R at 15 (describing the Amended Complaint as "extremely lengthy" and "rambling").   The Amended Complaint's convoluted structure and "[u]nnecessary prolixity . . . places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (internal quotation marks and citation omitted).  Although the

---

[8] About six weeks after Bocci commenced this litigation, she filed the Amended Complaint to add further identifying information about Deutsche Bank.  *See* Dkt. 14.  It does not appear Bocci made any substantive changes from the original Complaint as to her allegations or causes of action. *Compare* Dkt. 1, *with* Am. Compl.

[9] In granting Bocci leave to amend, the Court emphasizes that it does not opine on the merits of the proposed amendments referred to throughout her Objections.

Amended Complaint's form does not rise to the level of warranting dismissal under Rule 8(a)(2), in granting Bocci leave to replead the Court strongly urges her to heed Rule 8's requirements. Bocci is further cautioned that she should only file a second amended complaint if she believes in good faith that she can address the pleading deficiencies identified herein and in Judge Parker's Report and Recommendation. She further is advised that, absent good cause shown, further leave to amend will not be granted. Finally, the Court reminds Bocci that a second amended complaint would completely replace—not supplement—her existing Amended Complaint, so any allegations and materials that Bocci would like the Court to consider must be pleaded in or attached to the new complaint.

## VI.  Conclusion

For these reasons, the Court overrules the parties' objections and adopts Judge Parker's Report and Recommendation. If Bocci chooses to file a second amended complaint, she must do so within thirty days of the issuance of this Opinion and Order. If Bocci fails to file a second amended complaint within thirty days, or fails to obtain an extension of time to do so by that date, the Court will dismiss with prejudice those claims identified herein and in the Report and Recommendation as having been deficiently pleaded. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 47.

SO ORDERED.

Dated: September 27, 2024
New York, New York

JOHN P. CRONAN
United States District Judge