UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                  :

CANDACE BOCCI,                        :

                          :

           Plaintiff,           :

                          :          23 Civ. 1780 (JPC) (KHP)

        -v-                    :

                          :         <u>OPINION AND ORDER</u>

NATIONSTAR MORTGAGE LLC      :
d/b/a MR. COOPER, and DEUTSCHE BANK  :
NATIONAL TRUST COMPANY, AS TRUSTEE FOR  :
BCAP TRUST LLC 2007-AA3 MORTGAGE PASS-  :
THROUGH CERTIFICATES SERIES 2007-AA3,  :

                          :

          Defendants.      :

                          :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      *Pro se* Plaintiff Candace Bocci has sued Nationstar Mortgage LLC d/b/a/ Mr. Cooper ("Nationstar") and Deutsche Bank National Trust Company ("Deutsche Bank"), in its capacity as trustee for BCAP Trust LLC 2007-AA3 Mortgage Pass-Through Certificates Series 2007-AA3. Defendants previously moved to dismiss Bocci's first Amended Complaint for failure to state any claims for relief, Dkt. 47, which the Honorable Katherine H. Parker recommended the Court grant in part and deny in part, Dkt. 54. The undersigned adopted Judge Parker's Report and Recommendation in full, granting Bocci leave to further amend her first Amended Complaint as to those claims that were dismissed without prejudice. *See Bocci v. Nationstar Mortg. LLC*, No. 23 Civ. 1780 (JPC) (KHP), 2024 WL 4326932, at *1 (S.D.N.Y. Sept. 27, 2024).

      In response, Bocci filed a Second Amended Complaint, Dkt. 73 ("SAC"), which purported to fix her pleading deficiencies on the claims that had previously been dismissed without prejudice and added certain other claims. All told, Bocci alleges that in servicing her mortgage—and

eventually attempting to foreclose on her home—Defendants violated a host of federal and state consumer protection statutes and regulations including the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, the Truth in Lending Act, and Section 349 of the New York General Business Law.  Bocci also asserts several common-law causes of action, including claims for breach of contract, promissory estoppel, slander of title, fraud, and defamation.

Defendants moved to dismiss Bocci's Second Amended Complaint, this time arguing that most—but not all—of Bocci's claims should be dismissed, and that the Court should abstain or stay the case while foreclosure proceedings play out in state court.  On August 8, 2025, Judge Parker issued a thorough Report and Recommendation, again recommending that the Court grant in part and deny in part Defendants' latest motion to dismiss.  Dkt. 89 ("R&R").  While Judge Parker recommended that the Court not abstain, she recommended that the case be stayed pending the state-court foreclosure proceedings.  Bocci, but not Defendants, filed objections to the Report and Recommendation.  Dkt. 90 ("Bocci Objections").  The Court overrules almost all of Bocci's objections, adopts the Report and Recommendation in overwhelming part, stays the case pending the foreclosure proceedings, and grants Bocci further leave to amend her Second Amended Complaint as to those claims that are dismissed without prejudice once the stay in this case is lifted.

## I.  Background

A.     Facts[1]

The Court assumes familiarity with the factual background of this case and with Judge Parker's Report and Recommendation of August 8, 2025, and thus recounts the material facts only briefly here.

On March 22, 2007, Bocci closed on the purchase of a condominium unit in lower Manhattan.  SAC ¶ 9.  To help pay for that home, Bocci executed a $760,000 mortgage loan with a lender.  *Id.*  Under the terms of Bocci's mortgage loan, she was only responsible for making payments on the interest portion of the loan for ten years, after which point she would be required to start paying off the principal as well.  *Id.* ¶ 13.  A couple of months after she signed for the loan, Bocci's lender sold her mortgage, which eventually became "incorporated" into BCAP Trust LLC 2007-AA3 Mortgage Pass-Through Certificates Series 2007-AA3, an entity for which Deutsche Bank serves as the trustee.  *Id.* ¶¶ 3, 10, 16, 18.  And, in July 2013, Nationstar took over responsibility for servicing the loan.  *Id.* ¶ 11.

In late 2017, Bocci found herself in financial trouble.  She had recently lost her job, which made it difficult for her to keep up with her mortgage payments, particularly since her obligation to make payments on the principal portion of the loan had started in March of that year.  *Id.* ¶¶ 13, 14.  Bocci accordingly reached out to Nationstar in October 2017 to begin exploring payment alternatives such as a "temporary loan modification."  *Id.* ¶¶ 14-15.  Eventually, in December 2017, she submitted a "loan modification application" to her point of contact at Nationstar.  *Id.* ¶ 27.

---

[1] The following facts, which are assumed true solely for purposes of this Opinion and Order, are taken from Bocci's Second Amended Complaint and the exhibits attached thereto.  *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor").

On January 22, 2018, Bocci received a letter from Nationstar dated January 12, 2018 (the "Forbearance Letter") regarding its Unemployment Program. *Id.* ¶ 30; *id.*, Exh. 9. The letter informed Bocci that she had "qualified for the Unemployment Program" and was being offered a "temporary Forbearance Plan." *Id.*, Exh. 9 at 1. Under the terms of the new Forbearance Plan, Bocci was required to make six monthly payments of $909.44 from February 1, 2018, to July 1, 2018, "in lieu of [her] regular monthly mortgage payment." *Id.* The Forbearance Letter warned that if Bocci failed to make any of those reduced monthly payments, the "offer will be revoked and [Nationstar] may refer [her] mortgage to foreclosure." *Id.* The Forbearance Letter also noted that because Bocci would be making reduced payments for six months, she would "become delinquent on [her] mortgage." *Id.* But even so, the letter assured: "We will not refer your loan to foreclosure or proceed to foreclosure sale during this Forbearance Plan, provided you are complying with the terms of the Forbearance Plan." *Id.* at 2. And the Forbearance Letter also reaffirmed that Bocci "may make the Forbearance Plan payment instead of the payment required under [her] loan documents," even though her "current loan documents remain in effect." *Id.* Finally, the Forbearance Letter noted that Nationstar would provide Bocci with "information on alternatives that may be available to [her] at the end of the Forbearance Plan term, such as a reinstatement, repayment plan or other alternative to foreclosure, such as a loan modification." *Id.*

On February 1, 2018, Bocci made the first reduced payment called for by the Forbearance Plan. SAC ¶ 31. The next day, however, she received a letter from Nationstar indicating that her $909.44 payment had been placed in an "unapplied funds account" because the payment was "insufficient to be applied as a full payment" toward her balance. *Id.* ¶ 32; *id.*, Exh. 10 at 1. Bocci also attempted to make reduced payments under the Forbearance Plan on March 1 and March 30, but received similar letters both times rejecting her payments as insufficient. SAC ¶¶ 35-38.

Meanwhile, Bocci "began receiving demand letters and collection calls from Nationstar" despite her attempts to comply with the Forbearance Plan's payment schedule. *Id.* ¶ 34. Eventually, on May 6, 2018, Nationstar stopped accepting Bocci's reduced payments altogether, and later credited back two further payments that Bocci timely made on May 1 and June 1 of that year. *Id.* ¶¶ 44-45. Then, on May 14, 2018, Bocci received a letter from Nationstar dated April 16, 2018, stating that her participation in the Forbearance Plan had been approved in error because, in fact, Nationstar had lacked "approval from the investor" which was a "require[ment] for [her] loan." *Id.* ¶ 46; *id.*, Exh. 15 at 1. And despite Bocci having received no previous acceptance of her December 2017 loan modification application, the April 16 letter also stated that Bocci had been "approved for the Standard Modification Program on January 11, 2018, by error." *Id.*, Exh. 15 at 1. Later, in mid-June 2018, Bocci attempted to make the May 1 and June 1 payments again, but Nationstar once more credited those payments back to Bocci's bank account. SAC ¶¶ 55-56. Also, on July 14, 2018, Bocci received another letter from Nationstar claiming that she had been erroneously approved for the Forbearance Plan and stating that Nationstar would refuse to accept her reduced payments. *Id.* ¶ 58; *id.*, Exh. 19.

Despite Bocci's efforts to adhere to the terms of the Forbearance Plan, Nationstar referred her home for foreclosure in June 2018. SAC ¶ 185. Deutsche Bank then formally initiated foreclosure proceedings against Bocci on December 12, 2018, through the filing of a Mortgage Foreclosure Complaint in New York state court. *See Deutsche Bank Nat'l Tr. Co. v. Bocci*, Index No. 850340/2018, Dkt. 2 (N.Y. Sup. Ct. Dec. 12, 2018). As part of those proceedings, Deutsche Bank filed a Notice of Pendency, traditionally referred to as a *lis pendens*, with the court and directed the County Clerk to record the notice against Bocci's property. *See id.*, Dkt. 3. On August 22, 2022, Deutsche Bank moved to discontinue the proceedings, which the court granted. SAC

¶¶ 201-202.  Deutsche Bank then commenced a new state-court foreclosure proceeding against Bocci on September 26, 2023.  *See Deutsche Bank Nat'l Tr. Co. v. Bocci*, Index No. 159458/2023, Dkt. 1 (N.Y. Sup. Ct. Sept. 26, 2023).  On May 9, 2025, Bocci moved to stay those proceedings in light of this litigation, *see id.*, Dkt. 70, which the state court denied on June 24, 2025, *see id.*, Dkt. 108.  As the state court explained, it "is more aptly equipped to resolve the parties' dispute since issues of state substantive common-law predominate," such that "[u]nder the circumstances, a more complete disposition of the issues between the parties will arise from th[at] action."  *Id.* That foreclosure proceeding thus remains pending.

Meanwhile, beginning in July 2018, Bocci sent various written requests for information to Nationstar in connection with her mortgage.  SAC ¶ 61.  Through various representatives, Bocci sent those requests on the following dates: July 20, 2018, *id.*, Exh. 20, August 20, 2018, *id.*, Exh. 21, September 14, 2018, *id.*, Exh. 25, October 16, 2018, *id.*, Exh. 27, May 2, 2019, *id.*, Exh. 38, November 13, 2020, *id.*, Exh. 53, January 28, 2021, *id.*, Exh. 55, and June 28, 2021, *id.*, Exh. 64. Bocci characterizes each of these communications as a Qualified Written Request ("QWR") pursuant to Section 2605 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e)(1).  SAC ¶ 61.

Finally, Bocci claims that she suffered various harms because of Defendants' conduct. These harms include incurring costs and legal fees in defending against the foreclosure of her home and sending QWRs, experiencing a decline in her credit score, loss of one of her credit card accounts, reduced ability to access new lines of credit, missing out on various business opportunities, damage to her reputation, and emotional and physical distress caused by the stress of dealing with the foregoing events.  *See, e.g.*, *id.* ¶¶ 261, 286-289.

**B.    Procedural History**

Bocci commenced this action against Nationstar and Deutsche Bank on February 28, 2023.

Dkt. 1 ("Orig. Compl.").  Through an 81-page, 467-paragraph Amended Complaint that she filed

on April 13, 2023, Bocci alleged dozens of federal and state-law claims against both Defendants

broadly seeking relief in connection with Nationstar's servicing of her mortgage loan and Deutsche

Bank's conduct in attempting to foreclose on her home.  Dkt. 14 ("FAC").[2]  As construed by Judge

Parker in her first Report and Recommendation, the causes of action in Bocci's first Amended

Complaint included federal claims under various provisions of RESPA, the Truth in Lending Act

("TILA"), the Fair Credit Reporting Act ("FCRA"), the Consumer Financial Protection Act

("CFPA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Coronavirus Aid, Relief,

and Economic Security Act ("CARES Act"), as well as their implementing regulations.  Dkt. 54

at 12.  The first Amended Complaint also pleaded state statutory claims arising under New York

General Business Law Sections 349 and 350, New York Banking Law 12-D Section 419, New

York Banking Law Section 9-x, and New York Real Property Law Section 254-b.  *Id.* at 12-13.

Finally, Bocci also alleged state common-law claims for breach of contract, malicious prosecution,

fraud, defamation, intentional infliction of emotional distress, negligent infliction of emotional

distress, and negligence.  *Id.*[3]

On December 15, 2023, Defendants moved to dismiss the first Amended Complaint for

failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).  Dkt. 47.  On June

28, 2024, Judge Parker issued a Report and Recommendation on Defendants' motion to dismiss,

---

[2] Bocci also moved for a preliminary injunction to prevent Defendants from foreclosing on her home, Dkt. 3, which the Court denied on July 7, 2023, Dkt. 32.

[3] The parties do not dispute that New York law applies to each of Bocci's common law claims.

recommending that the motion be granted in part and denied in part. Dkt. 54 at 1. Judge Parker observed that Bocci conceded in her opposition to Defendants' motion that her FDCPA and malicious-prosecution claims failed as a matter of law and concluded that neither the CARES Act nor the CFPA afford a private right of action, and accordingly recommended dismissal of those claims with prejudice. *Id.* at 15, 29, 55. As to Bocci's other federal causes of action, Judge Parker recommended dismissing without prejudice her claims under TILA, the FCRA,[4] and Section 2605(e)(1)-(2) of RESPA to the extent that those claims fell within the applicable statutes of limitations.[5] *Id.* at 54-55. Judge Parker also recommended dismissal without prejudice of most of Bocci's common-law causes of action, namely, her claims for breach of contract as to Nationstar's alleged promise to offer her a permanent loan modification, fraud, defamation,[6] intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. *Id.* Further, Judge Parker recommended dismissal without prejudice of Bocci's statutory claims under Sections 349 and 350 of the New York General Business Law and Section 254-b of the New York Real Property Law. *Id.* at 37-42, 44. And as to Bocci's claims under the New York Banking Law, Judge Parker recommended dismissal with prejudice. *Id.* at 42-44.

But Judge Parker recommended denying Defendants' motion to dismiss as to Bocci's claim under Section 2605(e)(3) of RESPA related to her June 28, 2021 QWR and her claim under one of the statute's implementing regulations, 12 C.F.R. § 1024.41. Dkt. 54 at 22-24. Likewise, Judge

---

[4] As to the portion of Bocci's FCRA claim under 15 U.S.C. § 1681s-2(a), Judge Parker recommended dismissal with prejudice because there is no private right of action for violations of that provision. Dkt. 54 at 25.

[5] Judge Parker recommended dismissal with prejudice of the time-barred portions of Bocci's claims. Dkt. 54 at 54.

[6] To the extent that some portions of Bocci's defamation claim were preempted by the FCRA, Judge Parker recommended dismissal with prejudice. Dkt. 54 at 49.

Parker recommended denying Defendants' motion to dismiss as to Bocci's breach of contract claims based on Nationstar's alleged failure to honor the Forbearance Plan and on Deutsche Bank's failure to verify certain information before commencing foreclosure proceedings. *Id.* at 31-34, 37.

After hearing the parties' various objections and responses, Dkts. 58, 60, 64-65, this Court overruled each of the parties' objections, adopted the Report and Recommendation in full, and granted Bocci leave to further amend her complaint as to those claims that were dismissed without prejudice. *Bocci*, 2024 WL 4326932, at *1, *17.

On December 20, 2024, Bocci filed the Second Amended Complaint, which preserved those claims that had not been dismissed, repleaded certain claims that had been dismissed without prejudice, and added others. *See* SAC ¶¶ 214-285.[7] The claims in that complaint are: (1) RESPA violations by Nationstar, *id.* ¶¶ 214-227; (2) FCRA violations by Nationstar, *id.* ¶¶ 228-232; (3) TILA violations by both Defendants, Nationstar and Deutsche Bank, *id.* ¶¶ 233-237; (4) breach of contract by Nationstar, *id.* ¶¶ 238-245; (5) promissory estoppel by Nationstar, *id.* ¶¶ 246-252; (6) breach of contract by Deutsche Bank, *id.* ¶¶ 253-261; (7) slander of title by Deutsche Bank, *id.* ¶¶ 262-266; (8) fraud by both Defendants, *id.* ¶¶ 267-271; (9) defamation by both Defendants, *id.* ¶¶ 272-76; and (10) violations of Section 349 of New York's General Business Law by both Defendants, *id.* ¶¶ 277-285.

On February 10, 2025, Defendants moved to dismiss much of Bocci's Second Amended Complaint for failure to state a claim, and all of the Second Amended Complaint for lack of subject

---

[7] In filing the Second Amended Complaint, Bocci dropped her claims under the CFPA, the FDCPA, the CARES Act, Section 350 of the New York General Business Law, Sections 9-x and 419 of the New York Banking Law, and Section 254-b of the New York Real Property Law, as well as her claims for malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence. *Compare* Orig. Compl., FAC, Dkt. 54 (June 28, 2024 Report and Recommendation), *with* SAC.

matter jurisdiction under the *Colorado River* abstention doctrine.  Dkt. 76; *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); *Riggi v. Charlie Rose Inc.*, 777 F. Supp. 3d 356, 361 (S.D.N.Y. 2025) ("A motion to dismiss based on *Colorado River* is considered a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of Federal Rules of Civil Procedure." (citations omitted)).  Bocci filed her opposition on April 21, 2025, Dkt. 80, and Defendants filed their reply on May 12, 2025, Dkt. 83.  Defendants filed two further declarations in support of their abstention motion, Dkts. 85, 87, to which Bocci responded in opposition, Dkts. 86, 88.

On August 8, 2025, Judge Parker issued a Report and Recommendation on Defendants' motion to dismiss, recommending that the motion be granted in part and denied in part.  R&R at 2.  First, Judge Parker recommend against abstaining under *Colorado River* "because the federal and state [foreclosure] actions are not parallel, and the six-factor test" under the doctrine "does not weigh in favor of abstention."  *Id.* at 14-20.  Judge Parker proceeded to evaluate Defendants' motion claim by claim.  As for RESPA, she recommended dismissing Bocci's claim under 12 U.S.C. § 2605(e)(1)-(2) and *sua sponte* recommended dismissing Bocci's claim, insofar as it pertained to Nationstar's failure to acknowledge receipt of Bocci's financials, under that statute's implementing regulation, 12 C.F.R. § 1024.41;  she once again recommended denying the dismissal under 12 U.S.C. § 2605(e)(3) as to Bocci's June 28, 2021 QWR and further recommended denying dismissal under 12 C.F.R. § 1024.41 as to Nationstar's failures to timely issue a determination on her June 22, 2020 loan modification application and to disclose the identity of the investors responsible for the loan modification.  R&R at 21-30.  Judge Parker recommended dismissing Bocci's FCRA and TILA claims, the former *sua sponte*.  *Id.* at 30-36.  She also recommended *sua sponte* dismissing Bocci's breach of contract claim "as to the alleged

promise by Nationstar to provide Plaintiff with a permanent loan modification at the end of the temporary Forbearance Plan's reduced payment period." *Id.* at 36-38.  She further recommended dismissing Bocci's promissory estoppel, slander of title, fraud, defamation,[8] and Section 349 claims. *Id.* at 38-51.

Judge Parker recommended that all the claims to be dismissed be done "with prejudice because Plaintiff has been provided with several opportunities to cure the deficiencies and has failed to do so, and for the claims that Plaintiff raises for the first time [in the Second Amended Complaint], leave to amend would be futile." *Id.* at 53-54.  Finally, while Judge Parker did not recommend abstaining, she recommended staying the case pending the resolution of the state foreclosure action. *Id.* at 51-53.

The Report and Recommendation, citing both Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1), advised the parties that Bocci had seventeen days and Defendants fourteen days from service of the Report and Recommendation to file any objections, and warned that failure to timely file such objections would result in waiver of any right to object for purposes of appeal. *Id.* at 55.  Plaintiff filed her objections to the Report and Recommendation on August 25, 2025, Dkt. 90, to which Defendants responded on September 15, 2025, Dkt. 93 ("Defts. Response").  Defendants did not file their own set of objections.

## II.  Legal Standard

### A.    Review of a Magistrate Judge's Report and Recommendation

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" in a report and recommendation.  28 U.S.C.

---

[8] Judge Parker determined that "Plaintiff's defamation claim is preempted to the extent it pertains to reports to consumer reporting agencies."  R&R at 47.

§ 636(b)(1)(C).  If, as here, a party submits a timely objection to any part of the magistrate judge's disposition, the district court will conduct a *de novo* review of the contested section.  *See* Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  "The district court may adopt those portions of the report and recommendation to which no specific written objection is made, so long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law."  *Diaz v. Comm'r of Soc. Sec. Admin.*, No. 22 Civ. 2256 (KMK) (VR), 2023 WL 6390172, at *1 (S.D.N.Y. Sept. 29, 2023) (internal quotation marks and alterations omitted).  And as Judge Parker correctly explained, "[a] Magistrate Judge's Report and Recommendation recommending that a claim be dismissed constitutes the requisite notice and opportunity to be heard to allow a district court to dismiss a claim *sua sponte*."  R&R at 14 (citing *E.A. Sween Co. v. A&M Deli Express, Inc.*, 787 F. App'x 780, 782 (2d Cir. 2019) (summary order)); *accord Newman v. Park*, No. 24 Civ. 6829 (JPC) (JW), 2025 WL 2350259, at *1 (S.D.N.Y. Aug. 14, 2025); *Avila v. Acacia Network, Inc.*, No. 23 Civ. 7834 (PAE) (KHP), 2025 WL 2233987, at *3 n.2 (S.D.N.Y. Aug. 6, 2025).

**B.        Rule 12(b)(6) Motion to Dismiss**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences

in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).  Moreover, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012) (internal quotation marks omitted).  But this liberal treatment is not boundless.  *See Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 428 (S.D.N.Y. 2017) ("[T]he liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." (internal quotation marks omitted)); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (internal quotation marks omitted)).

### III.  Discussion

The Court first explains briefly why Judge Parker's recommendation against abstention—to which Defendants raise no objections—is correct, before turning to Judge Parker's recommendations as to each claim.

### A.    *Colorado River* **Abstention**

Federal courts have a "virtually unflagging obligation" to "exercise the jurisdiction given them."  *Colorado River Water Conservation Dist.*, 424 U.S. at 817.  However, there are "exceptional circumstances" under which "[a]bstention from the exercise of federal jurisdiction" is appropriate.  *Id.* at 813-18 (citation omitted).  One set of circumstances involves "the contemporaneous exercise of concurrent jurisdictions," including "by state and federal courts," which occasionally "permit[s] the dismissal of a federal suit due to the presence of a concurrent

state proceeding for reasons of wise judicial administration." *Id.* at 817-18. The occasion calls for abstaining "where an existing parallel state-court litigation would accomplish a '*comprehensive disposition of litigation.*'" *Mochary v. Bergstein*, 42 F.4th 80, 85 (2d Cir. 2022) (quoting *Colorado River Water Conservation Dist.*, 424 U.S. at 817). Courts must thus "make a threshold determination 'that the concurrent proceedings are parallel.'" *Id.* (quoting *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). If that threshold is met, courts then weigh six factors to "determin[e] whether 'exceptional circumstances' justify abstention":

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Id.* (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100-01 (2d Cir. 2012)). The "balance" of those factors is "heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983), as "[o]nly the clearest of justifications will warrant dismissal," *Colorado River Water Conservation Dist.*, 424 U.S. at 819.

The Court finds Judge Parker's discussion of *Colorado River* to be well-reasoned and its conclusion recommending against abstention well-founded. Defendants fail to clear the first hurdle: this case and the state foreclosure action "are not 'concurrent and parallel' as each involve different parties, different issues, and different remedies." *Mochary*, 42 F.4th at 86. As Judge Parker explained, "parallelism does not exist between the federal and state proceedings" because the state action was brought solely by Deutsche Bank against Bocci, while this case also involves Nationstar; "the federal action includes claims that are not in the state action, including claims for breach of contract, promissory estoppel, defamation and slander of title"; and the main remedy in

the state case is Deutsche Bank's "possession of the property at issue," while here Plaintiff also seeks monetary and declaratory relief.  R&R at 16-17.  This mismatch is fatal to Defendants' abstention motion, as "parallelism" is a "necessary prerequisite."  *Mochary*, 42 F.4th at 86 (citation omitted).  Nor, for completeness's sake, does consideration of the six factors outweigh "the heavy presumption in favor of exercising jurisdiction."  *Niagara Mohawk Power Corp.*, 673 F.3d at 104. For instance, "several of [Bocci's] claims arise under federal law," R&R at 19-20, and "the presence of federal issues strongly advises exercising federal jurisdiction," *Vill. of Westfield v. Welch's*, 170 F.3d 116, 124 (2d Cir. 1999).  And "the remaining factors are either neutral or weigh in favor of this Court exercising jurisdiction," R&R at 18-20, which again is fatal, as "a neutral factor counsels against abstention," *Niagara Mohawk Power Corp.*, 673 F.3d at 102.

Abstaining under *Colorado River* is thus improper; nor do Defendants object to such a conclusion.  So the Court adopts Judge Parker's recommendation against abstaining.

## B.    RESPA

Judge Parker recommended dismissing Bocci's claims under Section 2605(e)(1)-(2) of RESPA as to Nationstar's alleged failure to adequately respond (or respond at all) to Bocci's November 13, 2020, January 28, 2021, and June 28, 2021 QWRs.  R&R at 21-24.  Bocci objects to this recommendation.  Bocci Objections at 1-4.  Judge Parker recommended against dismissing Bocci's claims under RESPA Section 2605(e)(3) as to the June 28, 2021 QWR.  R&R at 24-25. Defendants do not object to this recommendation.   And as for Bocci's claims under one of RESPA's implementing regulations, 12 C.F.R. § 1024.41, Judge Parker recommended dismissal "regarding Nationstar's failure to acknowledge receipt of [Bocci's] May 27, 2020 financials" but otherwise recommended against dismissing those claims.  R&R at 26-30.  None of the parties objects to those recommendations.

### 1. 12 U.S.C. § 2605(e)(1)-(2)

Bocci's first RESPA claim is based on Nationstar's alleged failure "to acknowledge receipt, conduct an investigation and correct errors, and substantively respond to the QWRs and [Notice of Error ('NOE')]" sent on November 13, 2020, January 28, 2021, and June 28, 2021. R&R at 21 (citing SAC ¶¶ 215-224). As relevant to this claim, Section 2605(e) of RESPA and its implementing regulations allow borrowers to submit QWRs to the party responsible for servicing their mortgage loan requesting information regarding loan-servicing matters or providing notice that their account is in error. 12 U.S.C. § 2605(e)(1); 12 C.F.R. § 1024.35-36. Once a QWR is received, the loan servicer has five days to acknowledge receipt of the request and thirty days to respond to it. 12 U.S.C. § 2605(e)(1)(A), (e)(2). In responding to a QWR, RESPA directs the servicer to, among other things and as applicable, "make appropriate corrections in the account of the borrower," provide a statement of reasons why the servicer believes the borrower's account to be correct, and either furnish "information requested by the borrower or an explanation of why the information requested is unavailable." *Id.* § 2605(e)(2).

RESPA affords borrowers a private right of action for a servicer's failure to adequately respond to a proper QWR. Specifically, the statute allows a borrower to recover "any actual damages to the borrower as a result of the failure" or, "in the case of a pattern or practice of noncompliance," statutory damages of up to $2,000. *Id.* § 2605(f)(1). Critically, to state a claim relating to a servicer's failure to comply with QWR requirements, the borrower "must allege injury and resulting damages that are proximately caused by the loan servicer's failure to adhere to its obligations under § 2605—*i.e.*, the timing and form of [the servicer's] responses to [the borrower's] QWRs." *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 264 (S.D.N.Y. 2017) (quoting *Gorbaty v. Wells Fargo Bank, N.A.*, No. 10 Civ. 3291 (NGG), 2014 WL 4742509, at *5

(E.D.N.Y. Sept. 23, 2014)); *see also Lau v. Specialized Loan Servicing, LLC*, No. 23 Civ. 1385 (JPC) (GWG), 2024 WL 3219810, at *8 (S.D.N.Y. June 28, 2024) (observing that "an allegation of actual damages is necessary to state a claim for liability" under Section 2605 (quoting *Dolan v. Select Portfolio Servicing*, No. 03 Civ. 3285 (PKC), 2016 WL 4099109, at *5 (E.D.N.Y. Aug. 2, 2016))); *Rosendale v. Mr. Cooper Grp. Inc.*, No. 19 Civ. 9263 (NSR), 2021 WL 4066821, at *12 (S.D.N.Y. Sept. 7, 2021) ("[A] plaintiff seeking actual damages under § 2605 must allege that the damages were proximately caused by the defendant's violation of RESPA." (internal quotation marks omitted)).

Judge Parker recommend dismissing this RESPA claim because Bocci "fails to allege that her asserted damages, including the alleged improper charges, misapplied payments, wrongful foreclosure, unlawful credit reporting, and emotional distress were proximately caused by Defendants' failure to properly respond to her QWRs." R&R at 22. As Judge Parker put it, the Second Amended Complaint "fail[s] to connect the dots as to why or how [Bocci's] damages were caused by Nationstar not adequately responding to her QWRs," as opposed to those damages being caused by Bocci "defaulting on her mortgage and being subjected to foreclosure proceedings." *Id.* at 22-23. Judge Parker deemed "speculative and conclusory" Bocci's allegation that had Nationstar "promptly responded to her QWRs," it "would have realized that investor approval was not required for her loan modification and reinstated her original forbearance plan." *Id.* at 23. And "even if Nationstar had responded in a timely manner and reinstated her temporary Forbearance Plan," Judge Parker concluded, Bocci "still had not made any payments toward her mortgage and was in default." *Id.* So, the Report and Recommendation concludes, Bocci fails to state a claim "through Section 2605(e)(1)-(2) of RESPA and its implementing regulations." *Id.*

Bocci objects to this conclusion and the rationale behind it. Bocci Objections at 1-4. She argues that Nationstar's "failure" to properly respond "foreseeably prolonged the false default, leading to foreclosure proceedings and credit damage" which "satisfies proximate cause, as a proper response would have halted these harms." *Id.* at 1. In other words, "Nationstar's failure to respond or correct errors" pointed out in the QWRs "allowed the harm to continue and worsen," even though correcting errors is RESPA's "core purpose." *Id.* at 3 (emphasis omitted). Although Bocci concedes "that in a narrow proximate-cause lens, courts often attribute damages to a borrower's default not the servicer's non-response," she argues that her case is an exception, as she pleads that "no default existed, and Nationstar's non-response prolonged very specific harms." *Id.* And she claims that her position is supported by the Second Circuit's decision in *Naimoli v. Ocwen*, 22 F.4th 376 (2d Cir. 2022). *Id.* at 3-4.

The Court agrees with Bocci that *Naimoli* supports her argument. In that case, the Second Circuit concluded that the borrower presented "evidence of actual damages" where she "allege[d]" that the servicer had "not provided any 'substantive response'" to the notice of error, and that such a response would include either 'correcting the error' or 'conducting a reasonable investigation.'" 22 F.4th at 385 (citation modified). Because the "asserted errors prevent[ed]" the borrower "from obtaining the loan modification to which she argue[d] she [was] entitled," thus resulting in a higher interest rate "that she must pay absent the modification," and the borrower alleged "that she will be required to repay the loan without modification," the Second Circuit concluded that the borrower was not required to "make an additional showing of damages to survive summary judgment." *Id.* at 385-36.

Indeed, Defendants do not argue that *Naimoli* supports their position as to damages. Instead, they rely on *Naimoli* for another proposition: that "the matters raised in the allege QWRs"

to which Bocci claims "Nationstar did not respond" fall outside "covered errors pursuant to RESPA." Dkt. 76-10 (Defendants' moving brief) at 7-9; *accord* Defts. Response at 5-6.   As *Naimoli* explains, RESPA and its implementing regulations require loan servicers to respond "only" to "covered errors," which encompass "any other error relating to the servicing of a borrower's mortgage loan."   22 F.4th at 381-82 (citation modified) (quoting 12 C.F.R. § 1024.35(a)-(b)).   That catch-call is "capacious," and includes an error that "relates to or is connected with either (a) the loan servicer's receipt of payments from borrowers or (b) the loan servicer's making of payments to the loan's owners or third parties."   *Id.* at 383-84.   It does not, however, include "challenges to the merits of a servicer's loss mitigation determination," as "a loan servicer's failure to properly evaluate a borrower for a loss mitigation option is not a covered error."   *Id.* at 384.   So while it "includes the kind of errors that Naimoli raised"—namely where a loan servicer loses and mishandles loan documents—that is because the servicer "could simply have located and recorded the documents without changing its decision regarding loss mitigation." *Id.* at 383-84.

Bocci's "asserted errors" amount to "challenges to the merits of a servicer's loss mitigation determination," which RESPA and its regulations exclude.   *Id.* at 384-85; *accord Sutton*, 228 F. Supp. 3d at 266 ("[C]ourts consistently distinguish[] loan servicing inquiries from loan modification inquiries, and have concluded that liability under § 2605(e)(1) does not inhere in the latter.").   As the Second Amended Complaint makes clear, the three QWRs/NOEs "identif[ied] Nationstar's failures," including "[b]reaching the forbearance agreement without justification; [f]orcing [her] loan into default; and [r]escinding an approved standard loan modification also without justification."   SAC ¶ 216; *see also id.* ¶ 217 ("I had also asserted specific loss mitigation mistakes, specifically that Nationstar baselessly reneged on the approved standard loan

mod[ification]."). Because Nationstar could not have responded to these requests "without changing its decision regarding loss mitigation," the "narrow exception to the catch-all provision, which excludes challenges to the merits of a servicer's loss mitigation determination," applies. *Naimoli*, 22 F.4th at 384-85.

The Court thus need not decide whether the Second Amended Complaint adequately pleads actual damages and proximate cause, as any deficient responses to the three QWRs/NOEs are not cognizable under this part of RESPA. So the Court adopts Judge Parker's recommendation to dismiss the Section 2605(e)(1)-(2) claim with prejudice, albeit because that claim is not premised on covered errors under RESPA and its implementing regulation.

### 2. 12 U.S.C. § 2605(e)(3)

Judge Parker explained that Bocci "plausibly pleads a claim under 12 U.S.C. § 2605(e)(3)" because applying "the liberal pleading standard [for] *pro se* litigants," the Second Amended Complaint is construed to allege "that Defendants submitted information regarding [Bocci's] overdue payments to the credit reporting agencies within 60 days after receiving [Bocci's] NOE in the June 28, 2021 QWR." R&R at 24-25. Defendants do not object to Judge Parker's reasoning and conclusion, and this Court finds her recommendation to be well-reasoned and well-founded.

In relevant part, Section 2605(e)(3) of RESPA provides:

> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency . . . .

12 U.S.C. § 2605(e)(3). To state a claim for relief under this provision, a plaintiff must allege "(i) that she sent defendants a qualified written request; (ii) that defendants submitted information regarding plaintiff's overdue payments to a credit reporting agency; and (iii) that defendants submitted such information within 60 days after defendants received plaintiff's qualified written

request." *Midouin v. Downey Sav. & Loan Ass'n, F.A.*, 834 F. Supp. 2d 95, 111 (E.D.N.Y. 2011). As Judge Parker noted, Bocci's June 28, 2021 QWR plausibly related to a dispute about Bocci's overdue payments, R&R at 25, and Bocci plausibly alleges that "Nationstar unlawfully reported" information about such payments *during and after* the QWR/NOE process," SAC ¶ 220 (emphasis added), which would include the 60-day period after Nationstar received the June 28, 2021 QWR. The Court thus agrees "that Defendants' motion to dismiss [Bocci's] 12 U.S.C. § 2605(e)(3) claim as to the June 28, 2021 QWR be denied." R&R at 25.

### 3. 12 C.F.R. § 1024.41

As Judge Parker construed the Second Amended Complaint, Plaintiff "alleges two violations of 12 C.F.R. § 1024.41." R&R at 26. The first alleged violation has two subparts: that Nationstar "failed to acknowledge receipt" of Bocci's "May 27, 2020 financials related to her June 22, 2020 application" within "five days of receiving" those financials, and that it "failed to issue a determination on her loan modification application completed on June 22, 2020 within the required 30-day period." *Id.* at 26-27. Judge Parker recommended dismissing the first subpart related to Bocci's May 27 financials and denying dismissal of the second subpart related to her June 22 application. Neither Bocci nor Defendants objected to those recommendations, and the Court finds them to be well-reasoned and well-founded.

Under 12 C.F.R. § 1024.41(3)(i), a loan servicer must send a borrower written notice with certain information "within 5 days" after receiving the "borrower's complete loss mitigation application." As Judge Parker explained, Bocci's May 27, 2020, financials were not a "complete loss mitigation application," but rather documents in support of that application. R&R at 27-28; *see* 12 C.F.R. § 1024.41(b)(1) (referring to "documents and information" necessary "to complete a loss mitigation application"). So Bocci's "claim regarding Nationstar's failure to acknowledge

receipt of her May 27, 2020 financials" is "dismissed" with prejudice.  R&R at 28.  By contrast, the June 22 submission was a complete loss mitigation application to which Nationstar had to respond "within 30 days" of receipt.  12 C.F.R. § 1024.41(c)(1).  Bocci indeed alleges that after her "application was deemed complete by Nationstar on June 22, 2020," it "failed to issue a determination within the required 30 days."  SAC ¶ 225.  Because those allegations convey "that Nationstar never sent her a denial letter stating the specific basis for [its] decision to deny her application and instructions on how to appeal the decision as required under 12 C.F.R. § 1024.41," Bocci "plausibly pleads a claim under 12 C.F.R. § 1024.41 as to the loan modification application completed on June 22, 2020."  R&R at 28.

The second alleged violation of 12 C.F.R. § 1024.41 is premised on Nationstar's repeated failure to provide Bocci with information about the investor whose requirements were purportedly the basis for denying her loan modification application.  *See* R&R at 27-29.  Under 12 C.F.R. § 1024.41(d), "[i]f a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower," the "servicer shall state in the notice" of denial "the specific reason or reasons for the servicer's determination."  As courts have explained, under "the [Consumer Financial Protection Bureau's] official interpretation of this regulation, if the denial is due to a restriction by the investor—that is, if the modification cannot be made by the servicer because the owner of the mortgage would not allow some condition necessary for the modification—then the explanation for the denial 'must identify the owner or assignee of the mortgage loan and the requirement that is the basis of the denial.'"  *Weisheit v. Rosenberg & Assocs., LLC*, No. JKB-17-0823, 2017 WL 5478355, at *4 (D. Md. Nov. 15, 2017) (citation omitted).  "A denial ostensibly based on an investor restriction that does not name the investor or explain the restriction has been held to be insufficient."  *Id.*  As Judge Parker observed,

and as Defendants do not dispute, that is precisely the case alleged here.  R&R at 29-30.  Her conclusion that Bocci "plausibly pleads a claim under 12 C.F.R. § 1024.41(d) as to Nationstar's failure to disclose the identity of the investors responsible for the loan modification" is thus well-founded, R&R at 30, such that the Court denies dismissal of that claim.

## C.    FCRA

Bocci's Second Amended Complaint asserts a claim under a provision of the FCRA that requires furnishers of credit information to investigate consumer disputes forwarded to them by reporting agencies, 15 U.S.C. § 1681s-2(b).    SAC ¶¶ 229-232; *see also* R&R at 30-31.  Specifically, Section 1681s-2(b) requires furnishers like Nationstar, upon receiving a notice of a credit dispute from a credit reporting agency ("CRA"), to "conduct an investigation with respect to the disputed information," among other things.  15 U.S.C. § 1681s-2(b)(1).  To state a claim under this provision, the plaintiff must allege "that (1) a furnisher received notice of a credit dispute from a [CRA] (as opposed to from the consumer alone) and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation."  *Lewis v. Old Navy*, No. 21 Civ. 9131 (LTS), 2022 WL 329195, at *2 (S.D.N.Y. Feb. 2, 2022) (internal quotation marks omitted).  As for the latter element, whether an investigation was reasonable "depends upon the nature and scope of the consumer's dispute to the CRA and is considered in light of what is learned about the nature of the dispute from the description in the CRA's notice of dispute."  *Potapova v. Toyota Motor Credit Corp.*, No. 23 Civ. 571 (JMF), 2024 WL 4026216, at *1 (S.D.N.Y. Sept. 3, 2024) (internal quotation marks omitted).

In her Report and Recommendation, Judge Parker explained that Bocci "merely alleges in a conclusory manner that 'Nationstar willfully failed to conduct a reasonable investigation as required under § 1681s-2(b), instead furnishing to the [CRAs] their "verified" false information.'"

23

R&R at 31 (quoting SAC ¶ 229).  As that "conclusory statement is devoid of sufficient factual content to plausibly give rise to an inference that Nationstar acted in a negligent or willful manner when conducting its investigation into the credit dispute or that the investigation was unreasonable," Judge Parker *sua sponte* recommended dismissing Bocci's "FCRA claim under 15 U.S.C. § 1681s-2(b)."  R&R at 30 n.5, 31.

Bocci objects.  Bocci Objections at 4-7.  She argues that her allegations that Nationstar negligently or willfully failed to reasonably investigate the credit dispute are not conclusory because, as a "consumer," she does "not have access to the details of Nationstar's internal investigation procedures or what steps, if any, were actually taken."  *Id.* at 6 ("The details of what steps, if any, Nationstar took to investigate the dispute—such as reviewing account, contacting relevant personnel, or examining trust documents—are entirely within Nationstar's exclusive control and knowledge.").

While the Court agrees with Judge Parker that Bocci's allegation that "Nationstar willfully failed to conduct a reasonable investigation as required under § 1681s-2(b)" is indeed conclusory, SAC ¶ 229, the conclusory nature of that allegation may be cured by "pleading facts alleged 'upon information and belief,'" as "the facts are peculiarly within the possession and control of the defendant" and "the belief" may be "based on factual information that makes the inference of culpability plausible," *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted).  For example, provided Bocci has a sufficient factual basis for the inference, she could allege on information and belief that Nationstar "spen[t] a 'minimal amount of time' investigating [the] claim" or "applie[d] a 'plainly erroneous interpretation of [its] legal obligations.'"  *Wang v. Bank of Am. Corp.*, No. 23 Civ. 4508 (VSB), 2025 WL 1826505, at *9 (S.D.N.Y. July 2, 2025) (final alteration in original) (quoting *Seamans v. Temple Univ.*, 744 F.3d 853, 866 (3d Cir. 2014));

*cf. Potapova*, 2024 WL 4026216, at *2 (explaining that where the plaintiff reported "that her identity had been used without her authorization" a "brief" investigation "consist[ing] of little or nothing more than comparing [her] name, date of birth, address, and social security number in the notices with [the furnisher's] internal records" could be considered "unreasonable"). Her allegations may not, however, boil down "to the untenable claim that any investigation that did not accept her allegations as accurate was by definition unreasonable." *DeSiena v. Pa. Higher Educ. Assistance Agency*, No. 22-1956, 2023 WL 4044109, at *2 (2d Cir. June 16, 2023) (summary order) (citation modified). Her current allegation that "Nationstar had again 'verified' the false information by informing the CRAs that the information should remain as-is on [her] credit report" arguably amounts to simply pleading that Nationstar's investigation did not accept her allegations as accurate. SAC ¶ 189.

Bocci requests "leave to amend" to "revise" the investigation "element to cure any deficiency," just as she cured "the notice element" in her Second Amended Complaint. Bocci Objections at 7. The Court agrees with Bocci's request. As she points out, the prior Report and Recommendation and this Court's Opinion adopting it focused on dismissing her Section 1681s-2(b) claim because her Amended Complaint failed to "allege[] that Defendants received notice from a [credit] reporting agency that [she] disputed the accuracy of information reported." Dkt. 54 at 26; *Bocci*, 2024 WL 4326932, at *8. Because Bocci's Second Amended Complaint cured the notice element of her claim which had previously been deficient, SAC ¶ 229, she argues that "it stands to reason [she] would have cured such investigation element if given the chance," such that dismissing this claim with prejudice is improper, Bocci's Objections at 5. Although in its prior opinion this Court observed that "the Amended Complaint itself does not plausibly allege *that Nationstar failed to conduct a reasonable investigation* in response to receiving notice of a

25

credit dispute from a reporting agency," *Bocci*, 2024 WL 4326932, at *8 (emphasis added), the Court agrees that Bocci should be given the opportunity to re-plead this claim. The Court thus sustains Bocci's objections to the extent this FCRA claim was recommended to be dismissed *with prejudice*. *See Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2022) (cautioning that *pro se* plaintiffs "should ordinarily be allowed to amend . . . as long as a liberal reading of the complaint suggests that it may state a claim").

**D.    TILA**

Judge Parker also recommended dismissing with prejudice Bocci's TILA claim. R&R at 31-36. As Judge Parker explained, Bocci points to "the mortgage statement sent to her on February 20, 2023 as being violative of TILA" because it incorrectly "stated her mortgage loan was in default" and "overstated" certain fees, thus violating "TILA's requirement that disclosures be accurate." *Id.* at 32; *see also* SAC ¶¶ 233-237. Judge Parker construed this claim to be "premised on an alleged violation of 12 C.F.R. § 1026.41(d) and 15 U.S.C. § 1638(f), which require mortgage loan servicers to provide specific information on mortgage statements." R&R at 32-33 & 33 n.6. Judge Parker found this claim to be deficient because (1) Bocci "had notice of these errors for more than one year prior to filing this action and more than one year prior to filing the [Second Amended Complaint]," such that it was "time-barred"; (2) Bocci failed to allege that "she is entitled to damages for the purported TILA violation"; and (3) Deutsche Bank cannot be held liable as an assignee or vicariously "for a violation of Sections 1638(f) and 1026.41." *Id.* at 33-36.

Bocci does not object to Judge Parker's recommendation, and this Court finds it to be well-reasoned and well-founded. Specifically, the Court agrees that Bocci's TILA claim is time-barred, and thus need not reach Judge Parker's other rationales. That claim is subject to a one-year statute of limitation. *See* 15 U.S.C. § 1640(e). While the Second Amended Complaint contends that this

claim is based on a "monthly statement" issued "on February 20, 2023"—just days before Bocci filed suit—the purported TILA violation arises from that periodic statement "inaccurately reflect[ing]" Bocci's "loan as in default, thereby falsely inflating the balance." SAC ¶ 234. TILA's statute of limitations begins to run "from the point at which a consumer would reasonably have been put 'on notice that a violation had occurred,'" and "a consumer is reasonably on notice upon receiving a billing statement reflecting the improperly imposed charge." *Schwartz v. HSBC Bank USA, N.A.*, 160 F. Supp. 3d 666, 680 (S.D.N.Y. 2016) (quoting *Baskin v. G. Fox & Co.*, 550 F. Supp. 64, 67 (D. Conn. 1982)); *accord Weiner v. JPMorgan Chase Bank, N.A.*, No. 21 Civ. 5957 (JPO), 2022 WL 1570717, at *2 (S.D.N.Y. May 18, 2022). As Judge Parker explained, "the incorrect information recited on the February 2023 statement is the same information that Plaintiff claims was incorrect on prior periodic statements (*i.e.*, that she was in default, that her March through June 2018 payments were not credited, resulting in inflated late fees and other fees)." R&R at 35. Because Bocci was put on notice of those alleged inaccuracies more than a year before filing suit, the Court agrees that TILA's statute of limitations bars her claim and thus dismisses it with prejudice.

## E.    Breach of Contract

Judge Parker once again recommended dismissing Bocci's breach-of-contract claim "as to the alleged promise by Nationstar to provide [Bocci] with a permanent loan modification at the end of the temporary Forbearance Plan's reduced payment period." *Id.* at 36-38. As Judge Parker explained, Bocci "fails to plausibly allege a breach of contract because there was no offer or acceptance of a permanent loan modification and no promise to grant her a permanent loan modification in the future." *Id.* at 38; *accord Bocci*, 2024 WL 4326932, at *9-11. Bocci's Second Amended Complaint may well be read to assert only a breach claim as to the temporary

forbearance contract, which remains live.  *See* SAC ¶¶ 238-245 (referring to "Nationstar's January 12, 2018 letter offering the trial forbearance"); *see also* R&R at 36 (acknowledging that Bocci "plausibly alleged a breach of contract claim as to the temporary Forbearance Plan that Nationstar allegedly offered [Bocci] in January 2018").  But Bocci does not object to the recommendation to dismiss a breach claim based on the permanent loan modification, instead framing it as a "promissory estoppel claim" which is merely "a restatement of the same operative facts previously pled as breach of contract."  Bocci Objections at 7.  (The Court discusses that promissory estoppel claim below.  *See infra* at III.F.)  To the extent, however, that the Second Amended Complaint can still be read to assert a breach claim as to the permanent loan modification, the Court adopts Judge Parker's recommendation and dismisses that claim with prejudice.

### F.    Promissory Estoppel

In her Second Amended Complaint, Bocci adds a claim for promissory estoppel against Nationstar related to her permanent loan modification, SAC ¶¶ 246-252, which she acknowledges is "a restatement of the same operative facts previously pled as breach of contract," Bocci Objections at 7.  "A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000) (Sotomayor, J.).  Judge Parker recommended dismissing this claim because Bocci "fails to plausibly allege that Nationstar promised her a permanent loan modification" and she "could not have reasonably relied on an alleged promise that she was not aware of."  R&R at 38-40.

Bocci objects, arguing that Nationstar's April 16, 2018 letter conveyed that her permanent loan modification *had* been approved, and that this "clear and unambiguous written promise[]"

was "supported by Nationstar's twice-delivered oral confirmations" that "upon successful completion of the forbearance, Nationstar would send [her] the permanent loan modification documents for signature."  Bocci Objections at 8-9; *see* SAC ¶¶ 246-247.

The Court, agreeing with Judge Parker's assessment, overrules Bocci's objections.  The original, temporary Forbearance Letter dated January 12, 2018, made clear that "60 days prior to the end of the Forbearance Plan," Nationstar would provide "*information* on alternatives that *may be available* to [Bocci] at the end of the Forbearance Plan term, such as a reinstatement, repayment plan[,] or other alternative to foreclosure, such as a loan modification."  SAC, Exh. 9 at 2 (emphases added).  Indeed, the Forbearance Letter emphasized that it was "not . . . a modification of the Loan Documents," and underscored that Nationstar was "not obligated or bound to make any modification of the Loan Documents."  *Id.*  As Judge Parker explained, the Forbearance Letter made "clear that it did not constitute a permanent loan modification or guarantee [Bocci] would later be granted such modification."  R&R at 39.  So that letter was not a clear and unambiguous promise of a permanent loan modification.

Bocci thus tries to turn Nationstar's April 16, 2018 letter into such a promise.  True enough, she "is correct that the letter suggests that Nationstar had *previously* approved her application for a loan modification."  *Bocci*, 2024 WL 4326932, at *10.  But that suggestion was not a promise, let alone a clear and unambiguous one.  Even under Bocci's reading of that letter, it was only "a statement of *past approval*," a point which she herself emphasizes.  Bocci Objections at 8 ("The use of the word 'approved' is critical, as it is a term of finality, not process.").  Yet "statements made" about "past practices" do "not represent a promise" for future conduct.  *LeBovici v. Jamaica Sav. Bank*, 434 N.E.2d 1332, 1333 (N.Y. 1982).  Indeed, the New York Court of Appeals has recently explained that even "present tense" language can be insufficient to establish a clear and

unambiguous "promise of future benefits." *Bentkowski v. City of New York*, No. 57, 2025 WL 1697939, at *3-4 (N.Y. Ct. App. June 18, 2025).[9] And here, of course, the April 16, 2018 letter spoke not only of Nationstar's past approval for a loan modification—it made plain that such approval was "by error." SAC, Exh. 15 at 1. So that letter also was not a clear and unambiguous promise of a permanent loan modification, and "[a]bsent a clear and unambiguous promise, any possible promissory estoppel claim must fail." *Bentkowski*, 2025 WL 1697939, at *4.

Finally, Bocci claims that Nationstar's website and oral representations constitute "a specific, actionable commitment" to permanently modify her loan. Bocci Objections at 8-9. The former does not constitute a clear and unambiguous promise: to the contrary, the website acknowledges that "eligibility requirements" for a permanent modification "may vary depending on the loan's investor," and even when someone is "approved for a loan modification" that person may "be required to first complete a Trial Period Plan," before "the permanent loan modification documentation will be" executed. SAC, Exh. 72. But the April 16, 2018 letter made clear to Bocci that even if the Forbearance Letter had been considered a "Trial Period Plan," that was "error," including because there had been no investor approval. *Id.*, Exh. 15 at 1. Especially in light of that letter, the standard website language cannot be read to constitute a clear and unambiguous promise of a permanent loan modification. *Cf. Ward v. NYU*, No. 99 Civ. 8733 (RCC), 2000 WL 1448641, at *6 (S.D.N.Y. Sept. 28, 2000) ("broad policy pronouncements" are insufficient). And Bocci does not claim that this website sufficed to establish a promise *before* receiving the April 16 letter. *See* Bocci Objections at 9 ("[M]y reliance occurred *after* receiving the April 16 letter.").

---

[9] Bocci's reliance on *Cyberchron Corp. v. Calldata Systems Development, Inc.*, 47 F.3d 39 (2d Cir. 1995), is thus misplaced. *See* Bocci Objections at 10-11. In *Cyberchron*, the promise was that negotiations "would be resolved later"—not that such negotiations *had* been resolved. 47 F.3d at 42, 44-45.

As for the latter, such oral representations run into the same Statute of Frauds problem that this Court previously identified. *See Bocci*, 2024 WL 4326932, at *10 ("Whether Bocci's oral conversations with Nationstar's representatives are characterized as the putative modification itself or as an agreement to offer a modification sometime in the future, the result is the same: given the absence of a writing, the Statute of Frauds renders those conversations ineffective to obligate Nationstar to modify Bocci's mortgage loan."). The New York Court of Appeals has recognized that "promissory estoppel may preclude enforcement of the statute of frauds" only in the "rare" cases where enforcing the statute of frauds "would be unconscionable." *In re Est. of Hennel*, 80 N.E.3d 1017, 1021-24 (N.Y. 2017). This is not such a rare case, especially in light of Nationstar's written representations that any loan-modification approval had been in error. *See Freeman v. MBL Life Assurance Corp.*, 60 F. Supp. 2d 259, 264 n.2 (S.D.N.Y. 1999) ("Under New York law, an unambiguous contract precludes a plaintiff's promissory estoppel claim based upon a subsequent inconsistent written or oral representation" such that "any reliance upon such mistaken representation is unreasonable as a matter of law."); *cf. Est. of Hennel*, 80 N.E.3d at 1024 (explaining that "what is unfair is not always unconscionable"). The Court thus adopts Judge Parker's recommendation to dismiss Bocci's promissory estoppel claim with prejudice.

## G.    Slander of Title

In her Second Amended Complaint, Bocci adds a claim for slander of title. SAC ¶¶ 262-266. The elements of this claim under New York law that a plaintiff must plead are: "(1) a communication falsely casting doubt on the validity of complainant's title, (2) reasonably calculated to cause harm, and (3) resulting in special damages." *Gonzalez v. J.P. Morgan Chase Bank, N.A.*, 228 F. Supp. 3d 277, 290 (S.D.N.Y. 2017) (internal quotation marks omitted). Judge Parker recommended dismissing this claim because Deutsche Bank's *lis pendens* "is truthful" and

"no resulting harm to [Bocci] can be reasonably calculated from it," such that Bocci "fails to plausibly plead the first two elements of her slander of title claim." R&R at 40-42. Plus, Judge Parker added, Bocci "fails to adequately describe special damages." *Id.* at 42-44.

Bocci does not object to this recommendation, and the Court finds it to be well-reasoned and well-founded. Indeed, as this Court previously explained, "New York courts routinely reject . . . claims for slander of title . . . on the ground that a *lis pendens*, which merely provides notice to the world that a particular property is the subject of ongoing litigation, is 'an undeniably true statement,' at least in the absence of allegations that in fact such litigation was not pending at the time the *lis pendens* was published." *Bocci*, 2024 WL 4326932, at *14 (quoting *Brown v. Bethlehem Terrace Assocs.*, 525 N.Y.S.2d 978, 979 (3d Dep't 1988)). Bocci alleges that "the underlying foreclosure action is baseless," SAC ¶ 265, not that there was no action in the first place. The Court thus dismisses Bocci's slander-of-title claim with prejudice.

## H.    Fraud

Judge Parker recommended dismissing Bocci's fraud claims. R&R at 44-46. To state a claim for fraud under New York law, the plaintiff must plausibly allege "a misrepresentation or a material omission of fact which was false and known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *City of Almaty v. Sater*, 503 F. Supp. 3d 51, 61 (S.D.N.Y. 2020) (quoting *Pasternack v. Lab. Corp. of Am. Holdings*, 59 N.E.3d 485, 491 (N.Y. 2016)).

Bocci claims that in "stat[ing] that investor approval was required under the trust's governing documents," Nationstar committed fraud. SAC ¶ 268. And she alleges that Deutsche Bank aided and abetted Nationstar in committing that fraud. *Id.* ¶ 269. But in making those claims,

Judge Parker reasoned, Bocci "fails to plausibly allege that she relied" on Nationstar's allegedly false investor-approval statement. R&R at 45. Bocci, instead, "contradict[ed] herself" by "admit[ting] that she did not rely on Defendants' statements"—specifically in saying that she "knew [Deutsche Bank] was materially misrepresenting the loan status and thus did not rely on" that misrepresentation. *Id.* (quoting SAC ¶ 269).

Bocci objects, arguing that there was no contradiction between her allegations of reliance on Nationstar's statement and her admission of non-reliance on Deutsche Bank's statement. Bocci Objections at 12-13. And true enough, Bocci's Second Amended Complaint indeed differentiates between her reliance as to Nationstar and her non-reliance as to Deutsche Bank, which is why Bocci alleges only that the latter aided and abetted the former's fraud. *Compare* SAC ¶ 268, *with id.* ¶ 269. But that is no matter: she still fails to plead how she "relied on Nationstar's investor-approval representations." *Bocci*, 2024 WL 4326932, at *13. In her Second Amended Complaint, Bocci alleges that she "changed" her "behavior" to her "detriment": she "continued to attempt to comply with the terms of the forbearance agreement by making timely payments; refrained from pursuing alternative solutions with other lenders such as refinancing the loan, or accessing home equity via loan or [home equity line of credit];" and "refrained from selling [her] property during this period." SAC ¶ 268. Such allegations fail to explain, however, why those actions stem from the allegedly false investor-approval requirement, as opposed to Nationstar's status as Bocci's mortgage provider. *See id.* ("I reasonably relied on Nationstar's false representation because Nationstar, as my loan servicer, was the entity charged with managing my mortgage and communicating accurate information about my loan terms, status, and options for relief."). Simply put, the Second Amended Complaint still lacks "factual allegations that indicate how Bocci

changed her behavior *in response to believing [Nationstar's] alleged misrepresentation*." *Bocci*, 2024 WL 4326932, at *13 (emphasis added).

And even if Bocci managed to sufficiently plead reliance, her allegations of *scienter* would still fall short. Under Rule 9(b), "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). So "to establish that a defendant committed fraud, or aided and abetted another's fraud, a plaintiff must establish the defendant's actual knowledge of the fraud." *Wyse v. Metro. Com. Bank*, No. 24 Civ. 9108 (PAE), 2025 WL 2208161, at *20 (S.D.N.Y. Aug. 4, 2025). Under the actual-knowledge standard, a complaint cannot allege "simply that the defendant *should have known* of the conduct," and thus "allegations that a defendant 'should have known that something was amiss with transactions,' even if pled with conclusory statements that the defendant 'actually knew something notwithstanding' are insufficient.'" *Id.* (citation modified). That is precisely the case here, as Bocci alleges that "Nationstar either knew or should have known that th[e investor-approval] representation was untrue when it made the statement." SAC ¶ 268. Nor is that deficiency cured by alleging that that any "mistake would have been promptly corrected" given the "checks and balances within [Nationstar's] own procedures," *id.*, as such an allegation of "constructive knowledge" is insufficient. *Wyse*, 2025 WL 2208161, at *20-23. Bocci's allegations of Deutsche Bank's knowledge are even more conclusory: she says only that Deutsche Bank "had knowledge of Nationstar's Deception the entire time." SAC ¶ 269(b). Yet "[s]uing a party on an aiding and abetting theory of liability . . . does not lessen th[e] standard" to plead actual knowledge. *Wyse*, 2025 WL 2208161, at *20 (citations omitted).

In sum, Bocci's allegations against Nationstar once again "fall short of stating plausible claims for fraud under New York law." *Bocci*, 2024 WL 4326932, at *13. And her "aiding and

abetting fraud claim" against Deutsche Bank "fails in the absence of underlying fraud." *IKB Int'l. S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 29 (2d Cir. 2014) (summary order). The Court, however, will give Bocci one more opportunity to amend her fraud claims in the event she is able to adequately plead reliance and state of mind. The Court therefore overrules Bocci's objections as to her fraud claims, except insofar as she asks to "alternatively grant leave to amend" those claims. Bocci Objections at 16.

I. **Defamation**

Bocci again alleges that Defendants defamed her. SAC ¶¶ 272-276. Allegedly, Deutsche Bank's September 26, 2023 *lis pendens* "falsely asserts" that the bank "has a valid legal claim against [Bocci's] property based on a purported default." *Id.* ¶ 274. And Nationstar allegedly "reported the false account delinquency and foreclosure to CRAs upon [Deutsche Bank's] commencement of the September 2023 foreclosure." *Id.* ¶ 275. Judge Parker recommended dismissing the defamation claim against Deutsche Bank both because Bocci "fails to detail the specific content of the allegedly defamatory statements" and because a *lis pendens* is "an undeniably true statement." R&R at 48-49 (quoting *Brown*, 525 N.Y.S.2d at 979). As for Nationstar, Bocci's "defamation claim is preempted" by the FCRA "to the extent it pertains to reports to consumer reporting agencies." *Id.* at 47 (citing *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45 (2d Cir. 2011)).

Bocci does not dispute these conclusions, and indeed "appreciate[s] the Court's guidance as to NY interpretation of the law that precludes the use of the *lis pendens*." Bocci Objections at 16. But she argues that they do "not preclude" her "claim against [Deutsche Bank] for providing the foreclosure-initiation information to Nationstar, who in turn furnished it to the CRAs." *Id.* "To the extent the Court finds the [Second Amended Complaint] lacking in specificity regarding

the 'particular words' of such communication," Bocci "request[s] leave to amend to plead the precise language and context of the filing," as she acknowledges that she did not plead "the specific words used" by Deutsche Bank.  *Id.*

The basis of this objection is somewhat unclear: Bocci is referring to pleading either "the precise language and context of the filing"—meaning the *lis pendens*—or any communications by Deutsche Bank to Nationstar about the *lis pendens* ("the foreclosure-initiation information").  In all events, the Court overrules Bocci's objection.  If the former, Bocci once again failed to "plead[] what assertions in the *lis pendens* made it false and defamatory," which she was already instructed to do.  *Bocci*, 2024 WL 4326932, at *14.  If the latter, Deutsche Bank would have simply communicated the filing of the *lis pendens* to Nationstar—"an undeniably true statement" about "an undeniably true statement."  *Id.*  So the Court adopts Judge Parker's recommendation to dismiss Bocci's defamation claim with prejudice.

**J.    New York General Business Law Section 349**

Bocci also argues that Judge Parker erred in recommending dismissal of her claim under New York General Business Law Section 349.  Bocci Objections at 16-17; *see* R&R at 49-51.  Section 349 is a provision of New York's consumer protection statute that broadly outlaws "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," N.Y. Gen. Bus. Law § 349(a), and affords a private right of action for injunctive and monetary relief, *id.* § 349(h).  To state a claim for relief under Section 349, the plaintiff must allege "three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004) (quoting *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000)).  But what sets Section 349

apart from many other consumer protection statutes is the requirement to allege consumer-oriented conduct on the part of the defendant; that is, allegations "showing injury or potential injury to the public," as opposed to injury only to the plaintiff herself. *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 65 (2d Cir. 2010); *see also Plavin v. Grp. Health Inc.*, 146 N.E.3d 1164, 1169 (N.Y. 2020) ("[A] General Business Law § 349 claim does not lie when the plaintiff alleges only a private contract dispute . . . which is unique to the parties, not conduct which affects the consuming public at large." (internal quotation marks and alteration omitted)); *Teller v. Bill Hayes, Ltd.*, 630 N.Y.S.2d 769, 772 (2d Dep't 1995) ("[T]he deceptive act or practice may not be limited to just the parties."). In determining whether the alleged misconduct was sufficiently consumer-oriented, courts have considered "whether the operative transaction: (1) affected a broad swath of consumers, (2) consisted of standard practices that necessarily affect numerous consumers, or (3) is unique to the parties." *Rosendale v. Mr. Cooper Grp. Inc.*, No. 19 Civ. 9263 (NSR), 2021 WL 4066821, at *19 (S.D.N.Y. Sept. 7, 2021).

Judge Parker recommended dismissing Bocci's Section 349 claim because her "allegations are specific to the handling of her mortgage and her subsequent attempts to obtain forbearance and loan modifications," and thus "do not impact a wide swath of consumers." R&R at 50-51. Bocci objects, arguing that "Nationstar's deceptive practices were part of a standardized, systemic pattern harming thousands of borrowers" and that its "deceptive acts—including delays in loan modifications, mishandling of complaints, dual tracking, and misapplication of payments— were . . . part of Nationstar's standard operating procedures." Bocci Objections at 16-17. In support, Bocci cites an exhibit attached to her Second Amended Complaint about a multistate consent judgment involving Nationstar in which it was alleged to, among other things, "convey[] conflicting messages to certain borrowers engaged in loss mitigation" and "fail[] to properly

process borrowers' applications for loan modifications," SAC, Exh. 73 at 2-3; *see also* SAC ¶¶ 278-279. But Bocci still fails to allege "any *specific* practices that impacted both [her] and consumers at large," as opposed to an aggregation of party-specific transactions. R&R at 51 (emphasis added). While Section 349 does not require "that consumer-oriented conduct be directed to *all* members of the public," it does require something like an "extensive . . . scheme that ha[s] a broader impact on consumers at large." *Plavin*, 146 N.E.3d at 1169-71 (citation modified). She does not plead, for example, any "institutionalized program" that Nationstar "routinely applied to all claimants" with a corresponding "broad impact" on those claimants. *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 953 N.Y.S.2d 96, 102 (2d Dep't 2012) (citation modified); *see also Kilgore v. Ocwen Loan Servicing, LLC*, 89 F. Supp. 3d 526, 536 (E.D.N.Y. 2015) (explaining that allegations of a widespread, misleading program must have "specificity both about . . . what representations" were "misleading" and "how those alleged misrepresentation were made to the public at large"). Instead, the "pattern of materially misleading actions" Bocci alleges Nationstar engaged in applies to *her* case specifically. SAC ¶ 279. As Bocci still fails to tie "specific practices that were common in those [prior enforcement] cases to her case," *Bocci*, 2024 WL 4326932, at *12, the Court adopts Judge Parker's recommendation to dismiss this claim with prejudice, too.

## K.    Leave to Amend

Judge Parker recommended that all the claims to be dismissed be done "with prejudice because [Bocci] has been provided with several opportunities to cure the deficiencies and has failed to do so, and for the claims that [she] raises for the first time, leave to amend would be futile." R&R at 53. Indeed, granting leave to amend would be allowing "a 'third bite at the apple,' which courts in this district routinely deny." *Binn v. Bernstein*, No. 19 Civ 6122 (GHW) (SLC), 2020

WL 4550312, at *34 (S.D.N.Y. July 13, 2020) (collecting cases), *report and recommendation adopted*, No. 19 Civ. 6122 (GHW), 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020).  However, where, as here, a party seeks to amend their complaint, "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  As the Court discusses above, Plaintiff may amend her complaint to re-plead her FCRA and fraud claims.  All other dismissed claims are done with prejudice and without leave to amend.  *See* R&R at 54 (collecting claims).  Finally, the Court reminds Bocci that a third amended complaint would completely replace—not supplement—her existing Second Amended Complaint, so any allegations and materials that Bocci would like the Court to consider must be pleaded in or attached to the new complaint—including those claims that have not been dismissed.

## IV.  Staying the Case

Rather than recommend abstaining under *Colorado River*, Judge Parker recommended granting a stay while the state-court foreclosure proceedings play out.  *Id.* at 51-53.  While Bocci does "not object to a stay of claims overlapping with [Deutsche Bank]," she objects to a stay as to Nationstar.  Bocci Objections at 17.  Such a "blanket stay of this action pending resolution of the state court foreclosure proceeding," she argues, would prejudice her "by preventing discovery from Nationstar, which is not available in the state court action."  *Id.*  Bocci asserts that discovery from Nationstar "is critical not only to the federal claims" but also to her "ability to defend against the foreclosure in state court."  *Id.*  Defendants, for their part, represent that "Nationstar remains the servicer" of Bocci's loan, such that Nationstar "has an obligation to respond to discovery requests that Ms. Bocci serves upon" Deutsche Bank, and that "even if Nationstar were not the mortgage loan servicer, Ms. Bocci would be able to subpoena information from Nationstar."  Defts. Response at 20.  Defendants further agree that if Bocci "prevails on any of her assertions"

in the state-court action, she may then "litigate her damages claims against Nationstar" in this Court. *Id.* at 20-21.

The Court agrees with Judge Parker that a stay of the entire action is appropriate. *See* R&R at 52-53. As Judge Parker explained, and as Bocci does not dispute, "state courts are well equipped to resolve foreclosure actions and evaluate temporary and permanent loan modifications"; a "stay would promote judicial efficiency" because a "core remaining issue concerns whether foreclosure can proceed or not"; the state court can remedy much of Bocci's harm, and this Court can remedy any remaining damages claims once the stay is lifted; there "is no inconvenience to the parties, counsel, or witnesses because the state and federal actions are in courts that are geographically close"; there is "no" meaningful "delay in resolution of issues for either side"; and "there is a substantial amount of factual and legal overlap between the two actions." *Id.*; *see also* Bocci Objections at 17 ("I respect the Court's deference to the State regarding foreclosures."). Under these circumstances, "a stay will permit the parties to resolve their disputes economically and fairly." *Kappel v. Comfort*, 914 F. Supp. 1056, 1058-59 (S.D.N.Y. 1996); *accord Windward Bora, LLC v. Bank of N.Y. Mellon as Tr. for Certificateholders of Cwalt, Inc.*, No. 19 Civ. 858 (RPK), 2020 WL 7042761, at *7 (E.D.N.Y. Nov. 30, 2020).

Nor does Bocci's narrow objection hold sway: under New York law, discovery is available not just from the parties but also from "any other person"—including Nationstar—whom she may serve with a subpoena. N.Y. C.P.L.R. § 3120; *see also, e.g.*, *Plastic Surgery Grp., P.C. v. Comptroller of State*, 144 N.E.3d 332, 336 (N.Y. 2019) ("CPLR 3120 provides, among other things, that a party to an action, seeking discovery, may serve a notice on another party, or a subpoena duces tecum *on a non-party*, demanding documents." (emphasis added)). So Bocci's sole assertion of prejudice fails to persuade.

40

The Court thus stays this case while the state foreclosure proceedings are pending.

## V.  Conclusion

For these reasons, the Court overrules almost all of Bocci's objections and adopts the vast majority of Judge Parker's Report and Recommendation.  The case is now stayed; the parties shall file a joint letter as to the status of the state-court foreclosure proceedings no later than April 1, 2026, or upon the conclusion of those proceedings.  Either party may move to lift the stay before that date should there be compelling reasons—beyond those already addressed in the Report and Recommendation or in this Opinion and Order—to do so.  Bocci shall have thirty days upon the lifting of the stay to file a third amended complaint as to only those claims that have been dismissed without prejudice and with leave to amend.  If she fails to file a third amended complaint within that time, or fails to obtain an extension, the Court will dismiss with prejudice those claims identified in this Opinion and Order and in the Report and Recommendation as having been deficiently pleaded.  The Clerk of Court is respectfully directed to terminate the motions pending at Docket Number 76 and Docket Number 87, and to stay the case.

SO ORDERED.

Dated: September 29, 2025
New York, New York

_____
JOHN P. CRONAN
United States District Judge

41